## BALL v EX-CELL-O CORPORATION

1. APPEAL AND ERROR—SUMMARY JUDGMENT—STIPULATION—MOOT QUESTION.

   A defendant's stipulation to liability at the onset of a trial made the validity of a pretrial partial summary judgment not determinative of all facts essential to establish defendant's liability to plaintiff a moot issue, and the Court of Appeals will not make a ruling contrary to the result of the trial which proceeded on the basis of defendant's admission.

2. LABOR RELATIONS—COLLECTIVE BARGAINING—LAYOFFS—DAMAGES—FUTURE DAMAGES.

   An award of reasonable future damages was appropriate where an employee under a collective bargaining agreement was wrongfully laid off and where the jury was without power to order reinstatement, and the jury was not limited in its consideration of damages to the period of the layoff during which the agreement was in effect.

3. LABOR RELATIONS—LAYOFFS—AVAILABILITY FOR WORK—EVIDENCE—EXCLUSION OF EVIDENCE.

   Evidence offered by a defendant corporation to show that others similarly situated as plaintiff had been recalled to work after a layoff, which inferred that the plaintiff did not report his availability for work and was therefore not entitled to damages for failure to be recalled, was properly excluded where the record was uncontradicted that plaintiff, reporting personally to defendant's personnel office, drew 14 weeks of unemployment benefits within 6 months of his layoff, and where defendant's own supervisor of employment records testified that plaintiff would not have received these benefits unless plaintiff had been able and available for work.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 727, 728, 853.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1294, 1321–1324.
[3] 48 Am Jur 2d, Labor and Labor Relations §§ 235, 237, 384.
[4] 47 Am Jur 2d, Judgment §§ 964–966.

4. JUDGMENT—INTEREST—DATE OF FILING COMPLAINT—DEFECTIVE
   COMPLAINT.

A Supreme Court determination that a plaintiff's original complaint was defective because of improper joinder became the law of the case regardless of the fact that the joinder statute under which the original claims of plaintiff and others were severed has since been repealed and that permissive joinder under the court rules could in all probability have been maintained; therefore, for the purposes of statutory judgment interest plaintiff's complaint does not relate back to the prior defective complaint but applies from the date of the new acceptable complaint (MCLA 600.6013; GCR 1963, 206).

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 March 7, 1974, at Detroit. (Docket No. 14659.) Decided April 26, 1974. Leave to appeal denied, 392 Mich —.

Complaint by Harold E. Ball against Ex-Cell-O Corporation for damages for breach of a collective bargaining agreement. Judgment for plaintiff. Defendant appeals. Affirmed with judgment modified.

*Miller, Klimist, Cohen, Martens & Sugerman, P. C.* (by *Bruce A. Miller* and *Murray A. Gorchow*), for plaintiff.

*Fischer, Franklin & Ford* (by *Leon R. Jones* and *Edward B. Harrison*), for defendant.

Before: DANHOF, P. J., and BRONSON and BOYLE,* JJ.

DANHOF, P. J. In September of 1955, defendant entered into a collective bargaining agreement with Local 49 of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America. In December of 1957, a large number of defendant's employees together with plaintiff were laid off, allegedly due to a breach by defendant of certain "transfer of work" clauses in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the agreement. On March 10, 1958, Claude Wilson, plaintiff Ball, and Rupert Fitzgerald brought suit in their own right and as assignees of 26 other laid-off employees against defendant. The Supreme Court ordered their complaint dismissed for misjoinder of claims.[1] In December of 1962, separate actions were filed by each of the laid-off employees. The action of Claude Wilson was the first to come to trial. Judgment was in Wilson's favor and was affirmed by this Court on appeal.[2]

On May 27, 1966, plaintiff filed a motion for partial summary judgment based on the verdict and record in the second *Wilson* case. On August 26, 1969, that motion was granted. The order stated, *inter alia:*

"d. Defendant Ex-Cell-O Corporation did subcontract or transfer work within the meaning of said contract. When Ex-Cell-O issued purchase orders to Badger Marine Company to do certain things and that function was to do certain work in connection with a job that Ex-Cell-O itself was doing for another company, namely Pratt and Whitney, that constituted subcontracting.

"e. Defendant Ex-Cell-O Corporation brought no work back as regards the foregoing.

"h. *Plaintiffs need only prove that their layoffs were caused by subcontracting or transferring out of work and that they suffered damages as a result thereof."*[3] (Emphasis supplied.)

Trial of this cause finally commenced on July 19, 1971. In his opening statement, defense counsel

---

[1] For pertinent portions of the collective bargaining agreement as well as a construction of the then applicable joinder statute, *see Wilson v Ex-Cell-O Corp*, 368 Mich 61; 117 NW2d 184 (1962).

[2] *Wilson v Ex-Cell-O Corp*, 12 Mich App 637; 163 NW2d 492 (1968). Leave to appeal denied by the Supreme Court, 382 Mich 760 (1969).

[3] Leave to appeal the order of partial summary judgment was denied by this Court on October 27, 1970. Leave to appeal was likewise denied by the Supreme Court, 384 Mich 805 (1971).

stipulated on the record that plaintiff's layoff was a result of subcontracting work in violation of the agreement:

"As I told you at that time, there was, at the outset of this case and others like it, an issue on the record as to whether the layoff of the individual plaintiffs in this case was caused by the purchase of parts of which is not in question, but which is involved here. And for the purposes of Mr. Ball's case, Ex-Cell-O Corporation admits that his layoff was the result of this purchasing and that if they had and could have done the work at Ex-Cell-O, he would have been employed during the period of the layoff. So, again, I submit to you that the only question which we feel will properly be presented to you as jurors, will be the amount of damages; the dollar amount to be determined by you on the evidence."

During trial, the court denied defendant's motion to introduce certain evidence which allegedly proved that plaintiff had never been recalled because he had never reported his availability for work. In accordance with defendant's stipulation of liability, the trial court instructed the jury that the only issue to be decided was that of damages. The jury was further instructed that it was not limited in considering that issue to the effective period of the collective bargaining agreement which had been breached.[4] The jury was instructed on plaintiff's duty to mitigate damages and was told to reduce plaintiff's damages by wages earned by plaintiff during the layoff period. Future or post-verdict damages were to be reduced by the jury to their present cash value.

The jury awarded damages in the sum of $145,338.78. Judgment on the verdict provides for

[4] The agreement terminated on August 31, 1958. Subsequent agreements between defendant and the union do not contain the transfer of work clauses at issue here.

interest at a rate. of 5% per annum from March 10, 1958. Defendant appeals.

I

Defendant claims that the trial court erred in granting partial summary judgment for plaintiff because the parties and the issues in the second *Wilson* case and this action were not the same and there was no mutuality. *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971). Plaintiff argues that *Howell* is inapplicable because actions to enforce collective bargaining agreements are governed by Federal substantive law. *Smith v Evening News Association,* 371 US 195; 83 S Ct 267; 9 L Ed 2d 246 (1962); *Humphrey v Moore,* 375 US 335; 84 S Ct 363; 11 L Ed 2d 370 (1964). Plaintiff contends that in this type of action a party may be collaterally estopped in the absence of mutuality. *Zdanok v Glidden Co,* 327 F2d 944 (CA 2, 1964), *cert den,* 377 US 934; 84 S Ct 1338; 12 L Ed 2d 298 (1964).

There is no need to resolve the question of whether there exists such a creature as the Federal substantive law of collateral estoppel applicable in state court actions to enforce collective bargaining agreements where Federal courts have concurrent jurisdiction by virtue of § 301 of the Labor Management Relations Act of 1947 (29 USCA 185). The partial summary judgment appealed from removed from the jury's consideration (1) whether defendant subcontracted work to an outside plant and (2) whether sufficient work was not brought back in violation of the agreement. It left for jury determination whether plaintiff was laid off as a result of the work transfer. In stipulating to liability at the onset of trial, defendant has made the validity of the partial summary

judgment a moot issue as to plaintiff Ball. The trial having proceeded on the basis of defendant's admission, this Court will not make a ruling that would achieve a contrary result. See *Grand Haven Twp v Grand Haven,* 38 Mich App 122; 196 NW2d 3 (1972), *aff'd,* 389 Mich 360; 207 NW2d 325 (1973).

## II

Equating breach of a collective bargaining agreement with that of a simple contract of employment, defendant claims that the trial court erred in not limiting the jury's consideration to damages sustained by plaintiff during that period of the layoff in which the contract was in effect. Plaintiff would thus only be entitled to damages from December 7, 1957 through August 31, 1958. This is especially so, claims defendant, in view of the fact that subsequent agreements between defendant and the UAW do not contain the transfer of work clauses at issue here. We disagree. The jury determined that, although plaintiff informed defendant of his availability for work, he was never recalled. Had defendant recalled plaintiff, it would have terminated plaintiff's damages and would have been free if permitted by the provisions of subsequent contracts to lay off plaintiff.

In *Richardson v Communications Workers of America,* 443 F2d 974, 978, 979 (CA 8, 1971), the Court elaborated on the difference between an ordinary contract of employment and a collective bargaining agreement in rejecting the same argument advanced here by defendant:

"Although the claim for wrongful discharge against the employer arises out of the bargaining agreement, it is equally clear that the terms of the agreement do not create the job and that no specific obligation to hire

flows from it. As has been often recognized, the collective bargaining agreement is not an ordinary contract but rather, in a sense, agglomerates a variety of rights and methodology relating to the employer, the union, and the employees. *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 578–581; 80 S Ct 1347; 4 L Ed 2d 1409 (1960). *Cf J I Case Co v NLRB,* 321 US 332, 334–335; 64 S Ct 576; 88 L Ed 762 (1944). The employment relationships which arise under it do not exist separate from it in a vacuum totally void of other relevant circumstances. The expiration date of a bargaining contract does not place the employee in jeopardy of losing his job at the termination of the agreement. In fact one of the very incentives to union representation is job security. The employee, the union which represents him, the company which employs him, each contemplate a 'subsisting' contractual relationship for an indefinite period of time.

\* \* \*

"The above discussion is germane for realization that an employee wrongfully discharged under a collective bargaining agreement, as exists here, suffers more than just the loss of a job itself. His damage must be appraised in terms of not only his wages, but the loss of seniority and the benefits which flow from it; he has thus lost his reasonable expectancy as to his continued employment. To measure this loss only to the expiration of an existing bargaining agreement fails to take into consideration the realities existing. It is true that this expectancy of continued employment might expire if the company goes out of business or if the collective bargaining agreement is not renewed with the union. But *cf Local 127, United Shoe Workers of America v Brooks Shoe Mfg Co,* 298 F2d 277 (CA 3, 1962); *Zdanok v Glidden Co, supra.* However, as these factors affect the employee's expectancy of work, in the present case they are even less contingent than the employee's possible contemplation of his own death or unforeseen disability. None of these considerations provide an automatic bar to a recovery for future wages beyond the termination of the bargaining agreement."

In *United Steelworkers of America v Enterprise*

*Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L
Ed 2d 1424 (1960), the Supreme Court held that
the Fourth Circuit Court of Appeals erred in rul-
ing unenforceable that portion of an arbitration
award for back pay and reinstatement subsequent
to the terminal date of the collective bargaining
agreement. In the case at bar, once plaintiff Ball's
grievance for wrongful layoff was denied in Janu-
ary, 1958, recourse was properly to the courts. The
jury, however, was without power to order rein-
statement. Where reinstatement is not possible, an
award of reasonable future damages is appropri-
ate. *De Arroyo v Sindicato De Trabajadores Pack-
inghouse, AFL-CIO,* 425 F2d 281 (CA 1, 1970).
*Thompson v Brotherhood of Sleeping Car Porters,*
367 F2d 489 (CA 4, 1966). In lieu of reinstatement,
the jury in the instant case assessed future dam-
ages. We find no error.

## III

Defendant contends that the trial court erred
reversibly by holding inadmissible evidence which
included (1) a seniority list showing plaintiff's
position vis-a-vis other employees, and (2) the per-
sonnel records of four other employees. Defendant
offered this evidence to show that others similarly
situated as plaintiff had been recalled to work.
Thus, the inference could be drawn that plaintiff
did not report his availability for work and was
not entitled to damages.

The record is uncontradicted, however, that
plaintiff, reporting personally to defendant's per-
sonnel office, drew 14 weeks of supplemental un-
employment benefits within 6 months of his layoff.
Defendant's own supervisor of employment records
testified that plaintiff would not have received

these benefits unless plaintiff had been able and available for work. There was further testimony that plaintiff continued to petition for employment at regular two-or three-month intervals until the year 1965 and was told that work was unavailable. In view of this evidence, defendant's proffered evidence as to what transpired in the cases of other employees was properly excluded.

## IV

·Defendant claims that the trial court erred in ordering statutory judgment interest on the jury's verdict from March 10, 1958, the date of the filing of the original Wilson-Ball-Fitzgerald action which was ordered dismissed by the Supreme Court for misjoinder. We agree. 1966 PA 276, being MCLA 600.6013; MSA 27A.6013, provided in pertinent part:

"Interest shall be allowed on any money judgment recovered in a civil action, *such interest to be calculated from the date of filing the complaint* at the rate of 5% per year." (Emphasis supplied.)

In this case, the complaint was filed December 27, 1962, and the language of the statute mandates that interest be calculated from that date. We recognize that the joinder statute under which the original claims were severed has since been repealed and that permissive joinder under GCR 1963, 206 could in all probability have been maintained. See *Gervais v Annapolis Homes, Inc,* 377 Mich 674; 142 NW2d 7 (1966). Nevertheless, the Supreme Court's determination that the original complaint was defective because of improper joinder has become the law of this case. Therefore, we hold that for the purposes of statutory judgment

interest plaintiff's complaint does not relate back to a prior defective complaint.

The jury's verdict is affirmed. The judgment below is modified, statutory interest to be calculated from December 27, 1962. No costs, neither party having fully prevailed.

All concurred.