JEROME v CRIME VICTIMS COMPENSATION BOARD

Docket No. 60168. Submitted July 14, 1982, at Lansing.—Decided
September 21, 1982. Leave to appeal applied for.

   Dawn Jerome was found strangled to death. She was survived by
   her husband, plaintiff Richard K. Jerome, and two minor
   children. Plaintiff applied to defendant Crime Victims Compen-
   sation Board for reimbursement of ambulance, funeral, and
   babysitting and child care expenses. The board awarded ambu-
   lance and funeral expenses but not the babysitting and child
   care expenses. Plaintiff appealed the denial of reimbursement
   of babysitting and child care expenses by leave granted. *Held:*

      Babysitting and child care expenses incurred by a husband-
   father after the death by homicide of his wife are not recover-
   able as "other services necessary" or "loss of support" under
   the crime victims compensation statute.

      Affirmed.

CRIMINAL LAW — CRIME VICTIMS COMPENSATION ACT — NECESSARY
   SERVICES.

   Babysitting and child care expenses incurred by a husband-father
   after the death by homicide of his wife are not recoverable as
   "other services necessary" or "loss of support" under the crime
   victims compensation statute (MCL 18.351[e], 18.361[1]; MSA
   3.372[1][e], 3.372[11][1]).

*Kelman, Loria, Downing, Schneider & Simpson*
(by *Janet M. Tooley),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Donald E. Erickson,*
Assistant Attorney General, for defendant.

REFERENCES FOR POINTS IN HEADNOTE
21A Am Jur 2d, Criminal Law § 1052.
Statutes providing for governmental compensation for victims of
   crime. 32 ALR3d 1446.

Before: ALLEN, P.J., and CYNAR and R. B. MARTIN,* JJ.

ALLEN, P.J. Does the language "other services necessary as a result of the injury upon which a claim is based", appearing in § 1(e) of the crime victims compensation act, MCL 18.351 et seq.; MSA 3.372(1) et seq., provide for reimbursement for services apart from and in addition to medical care and nonmedical remedial treatment? Are claimed babysitting and housekeeping expenses awardable as "loss of support" under § 11(1) of the statute, MCL 18.361(1); MSA 3.372(11)(1)? These questions of first impression come to us on leave granted on the following facts.

Plaintiff's wife, Dawn Jerome, was found strangled to death on October 2, 1979. The killer has never been found. Dawn was survived by her husband and two daughters, Amber, then age seven, and Amy, then age one. Within the time limitations set forth in the statute, plaintiff applied for ambulance costs of $78, funeral expenses of $2,180.68, and reimbursement for payments to his mother for babysitting and housekeeping, totalling $2,556 for 22 weeks. August 6, 1981, the Crime Victims Compensation Board entered an award of $78 for ambulance costs, $1,500 for funeral expenses and denied the claim for child care. Plaintiff requested a hearing which was held before the board in June, 1981. On August 19, 1981, the board affirmed its previous award. Babysitting and housekeeping expenses were denied for the following reasons:

"5. On August 19, 1980, the claimant made partial appeal of the decision and requested reconsideration for babysitting and housekeeping expenses. The claimant

* Circuit judge, sitting on the Court of Appeals by assignment.

claimed babysitting and housekeeping expenses fall within the definition of 'out-of-pocket loss' within the meaning of § 1(e) which states:

" ' "Out-of-pocket loss" means the unreimbursed and unreimbursable expenses or indebtedness reasonably incurred for medical care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, or other services necessary as a result of the injury upon which a claim is based.'

*   *   *

"8. After review of the evidence, the board determined that ' "other services" ' refers back to ' "for medical care" ' and relates to and is limited to medical type services such as physical therapy, prosthetic devices and convalescent aids and supplies and other equipment needed for the victim as a direct result of the physical injury. Babysitting and housekeeping expenses are a loss to the survivors and are not defined or compensable under this section.

"9. Although the claimant did not specifically request consideration under § 11(2), ' "loss of support" ', the board considered that section as it might relate to the issue of babysitting and housekeeping services."

The board also placed certain limits on the amount of attorney fees but later withdrew these limitations. Plaintiff's application for leave to appeal was granted by this Court on December 8, 1981. In the order granting leave to appeal, the parties were directed to brief, in addition to the questions raised under §§ 1 and 11, *supra*, two additional questions: (1) Was the board's attempt to limit attorney fees an issue of public importance and so likely to recur that this Court should consider the issue on appeal, even though technically the issue was moot in this case; and (2) Did the board err in limiting burial expenses to $1,-500? Before considering the issues of first impression, these being the main issues in this matter,

we speak to the additional questions which the parties were directed to brief.

Plaintiff obtained counsel pursuant to a contingent-fee contract. When plaintiff's application for benefits was presented, the board imposed a restriction pursuant to board "policy" that attorney fees should not exceed 10% of the benefits awarded. Realizing that the "policy" could not be implemented without promulgation of a rule properly enacted in accord with the Administrative Procedures Act,[1] the board withdrew its objection. Thinking that the withdrawal of objection applied only to the instant case, and did not include future cases filed with the board, this Court directed that the issue be briefed. However, the Attorney General now advises that the board has abandoned any attempt to apply the limitation to other claims pending or being submitted, unless and until a rule is fully promulgated. At oral argument, the Attorney General further advised that a rule has been promulgated and is presently pending before the Joint Rules Committee of the Legislature. Since appropriate rules have been promulgated, there is no indication that the problem is likely to recur. Therefore, the matter need not be addressed. *Colombini v Dep't of Social Services,* 93 Mich App 157; 286 NW2d 77 (1979).

The board has also adopted a "policy" limiting awards for funeral and burial expenses to $1,500. Like its "rule" governing attorney fees, the policy had been implemented without conforming to the procedures required for the promulgation of the rule by the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* Without full compliance with these procedures, there is no rule

---

[1] MCL 18.353(c); MSA 3.372(3)(c); *Williams v Warden,* 88 Mich App 782, 785; 279 NW2d 313 (1979).

and no authority to act. *Williams v Warden,* 88
Mich App 782, 785; 279 NW2d 313 (1979). Never-
theless, the amount of the funeral expenses was
not raised in plaintiff's application for leave to
appeal, probably because by letter dated August
19, 1980, plaintiff accepted the $1,500 award plus
$78 ambulance fees. At the hearing before the full
board in June 1981, plaintiff did not contest the
award of funeral expenses as made by the chair-
man of the board.

Since the chairman's decision as to funeral ex-
penses was not appealed to the full board, and
since at oral argument on appeal, plaintiff admits
this issue is not raised, we find that the award of
funeral expenses is not reviewable by this Court.
MCL 18.357(3); MSA 3.372(7)(3). Plaintiff did more
than fail to object, he agreed to the validity of the
funeral expenses award. *Ball v Ex-Cell-O Corp,* 52
Mich App 550; 218 NW2d 85 (1974), *lv den* 392
Mich 792 (1974).

Under the statute, a claimant may file for reim-
bursement of out-of-pocket losses. Under § 1(e),
*supra,* an out-of-pocket loss is defined as:

" 'Out-of-pocket loss' means the unreimbursed and
unreimbursable expenses or indebtedness reasonably
incurred for medical care, any nonmedical remedial
treatment rendered in accordance with a recognized
religious method of healing, or *other services necessary
as a result of the injury upon which a claim is based."*
MCL 18.351(e); MSA 3.372(1)(e). (Emphasis added.)

Plaintiff argues that babysitting and child care is
reimbursable under the "other services necessary"
language emphasized above. The board contends
that under the rule of *ejusdem generis,* the words
"other services" relate back to medical or medi-
cally related expenditures. Under *ejusdem generis,*

when general words follow a designation of particular subjects, the general words will ordinarily be related back and restricted to the same kind, class, or nature of the things specifically enumerated. 73 Am Jur 2d, Statutes, § 214, pp 407-408. When so applied in the instant case, the words "other services" follow "medical care" and "nonmedical remedial treatment" and must be restricted to medical care, treatment or therapy necessary to the victim in order to recover from injury.

Admittedly, the words "other services necessary" are ambiguous. Where statutory language is ambiguous, interpretation of the meaning thereof may be had by long-standing rules of interpretation, including *ejusdem generis*. *People v Smith,* 393 Mich 432, 436; 225 NW2d 165 (1975). Likewise, where a statute is ambiguous, administrative interpretation thereof should be given great weight. *Szabo v Ins Comm'r,* 99 Mich App 596, 598; 299 NW2d 364 (1980). Construction of a statute by those charged with the duty of executing it should not be overruled in the absence of cogent reasons therefor. *Oakland Bd of Ed v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977). From the time the crime victims compensation statute first became effective March 31, 1977, until the present date, the board has consistently construed "other services necessary" to be restricted to medical care, treatment or therapy for the victim and necessary for the victim's recovery from the injury suffered.

Furthermore, defendant's interpretation of the out-of-pocket expenses is a reasonable interpretation. The provision was intended by the Legislature to be limited to those expenses most directly connected with the victim's physical and mental injuries. "Other services" does not, therefore, ordi-

narily include payments to a babysitter and house-keeper necessitated by the victim's death. Defendant's denial of plaintiff's claim on this ground was not arbitrary, capricious or an abuse of discretion. MCL 24.306(e); MSA 3.560(206)(e); *Pharris v Secretary of State,* 117 Mich App 202; 323 NW2d 652 (1982).

Plaintiff also contends that babysitting and child care payments made by him to his mother are awardable under § 11(2) of the statute. That section reads:

"An award made for loss of earnings *or support,* unless reduced pursuant to this act, shall be in an amount equal to the actual loss sustained. An award shall not exceed $100.00 for each week of lost earnings *or support.*" (Emphasis added.)

The board argues that this section refers only to monetary payments which have ceased as a result of the victim's injury or death. We agree with the board. Plaintiff's wife was not employed outside the home at the time of her death, and it does not appear that plaintiff was paying her any regular amount for her services.

Reading the statute as a whole, and giving consideration to the conditions and circumstances under which it was enacted, it appears that the Legislature was primarily concerned with compensating losses which were directly attributable to the crime and could be easily calculated in monetary terms. The commonly understood meaning of the terms "earnings" and "support" is, as defendant suggests, sums of money received on a regular basis for services performed. The defendant's denial of compensation based on this interpretation of the act was not arbitrary, capricious or an

abuse of discretion. MCL 24.306(e); MSA 3.560(206)(e); *Pharris, supra.*

Since its inception the statute has been relatively modestly funded. While this Court appreciates the hardship imposed when plaintiff by necessity was compelled to find someone to take care of his preschool-age children, we are also aware that the more money that is paid to any one claimant, the fewer are the claimants who may be compensated. It was in this climate that the statute was passed and funded. If a greater scope of award is to be made, it should be done by the Legislature and not by judicial interpretation.

Affirmed. No costs, a question of public importance being involved.