FOTHERGILL *v.* McKAY PRESS.

1. FRAUDS, STATUTE OF—CONTRACT PERFORMABLE WITHIN A YEAR.
   An oral contract which may, according to its terms, be performed within a year, is not within the statute of frauds (CL 1948, § 566.132).

2. SAME—ORAL CONTRACT OF EMPLOYMENT—TERMINATION.
   An oral contract of employment, subject to termination by either party upon 6-months' notice, *held,* a contract performable within a year, hence, not within the statute of frauds, the permission to terminate being a part of the agreement itself (CL 1948, § 566.132).

3. SAME—ORAL CONTRACTS—MEMORANDUM.
   A memorandum of an oral contract upon performance of which the parties had previously entered is no less a memorandum satisfying the statute of frauds because it purports to be the complete proposed contract between the parties (CL 1948, § 566.132).

4. CONTRACTS—WAIVER.
   The waiver of a provision in a contract is a matter of intent.

5. SAME—REDELIVERY OF MEMORANDUM—WAIVER.
   Redelivery of memorandum of an oral contract of employment, executed by the employer and presented to the employee some year and a half after employment relation had been entered into *held,* waived by employer, where employee continued in

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Statute of Frauds § 25.
Statute of frauds as applicable to contracts performable within one year. 129 ALR 534.
[2] 49 Am Jur, Statute of Frauds § 33.
[3] 49 Am Jur, Statute of Frauds § 321.
[4] 12 Am Jur, Contracts § 354.
[5] 12 Am Jur, Contracts § 355.

same duties for 2 years after memorandum was presented without anything having been said about his failure to make redelivery.

Appeal from Midland; Holbrook (Donald E.), J. Submitted June 7, 1960. (Docket No. 6, Calendar No. 48,171.) Decided December 1, 1960.

Action by Alfred J. Fothergill against McKay Press, a copartnership, for salary due on employment contract. Judgment for defendant at conclusion of plaintiff's proofs. Plaintiff appeals. Reversed and remanded.

*Francis & Wetmore (James W. Baker, John E. Riecker* and *Floyd E. Wetmore,* of counsel), for plaintiff.

*Currie & Currie,* for defendant.

BLACK, J. (*concurring*). In *Warner* v. *Texas & Pacific R. Co.* (1896), 164 US 418 (17 S Ct 147, 41 L ed 495), the supreme court had occasion to review generally the authoritative history of this particular provision of the statute of frauds.* The following conclusion was reached (pp 422, 423):

"It thus appears to have been the settled construction of this clause of the statute in England, before the Declaration of Independence, that an oral agreement which, according to the intention of the parties, as shown by the terms of the contract, might be fully performed within a year from the time it was made, was not within the statute, although the time of its performance was uncertain, and might probably extend, and be expected by the parties to extend, and did in fact extend, beyond the year.

* CL 1948, § 566.132, subd (1) (Stat Ann 1953 Rev § 26.922, subd [1]).—REPORTER.

"The several States of the Union, in re-enacting this provision of the statute of frauds in its original words, must be taken to have adopted the known and settled construction which it had received by judicial decisions in England."

Since submission of this case of Fothergill, Mr. Justice KAVANAGH has called attention to that line of Michigan cases, starting with *Smalley* v. *Mitchell* (1896), 110 Mich 650, which in steady seriation discloses Michigan's alignment with the foregoing settled construction of such statutory provision. *Smalley* states the rule this way (p 652):

"The mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that if, by any possibility, it is capable of being completed within a year, it is not within the statute, though the parties may have intended and thought it probable that it would extend over a longer period, and though it does so extend."[*]

I agree, then, solely on strength of Mr. Fothergill's actual right (as against defendant's motion for directed verdict) to recover for breach of a valid *oral* contract the parties agreed might be terminated on 6-months' notice, that the judgment of the circuit court should be reversed. There is more to be said, however, if we are to be fair to the trial judge.

This plaintiff did not urge below the true ground for his presently apparent right of recovery, that is, breach of an oral contract which, by its terms, was terminable at will of either party on the giving of notice of less than a year's time. Neither did he cite below (nor here for that matter) a single authority to the point of such right. Instead, plaintiff

---

[*] For our most recent quotation-applications of this rule see *Epstean* v. *Mintz*, 226 Mich 660, 667; *Caplis* v. *Monroe*, 228 Mich 586, 591; *Adolph* v. *Cookware Company of America*, 283 Mich 561, 568.

planted in the trial court (as here) his theory of recovery on affirmative answers to these questions:

"1. Did plaintiff's exhibit 1 satisfy the requirements of the statute of frauds, as a 'memorandum' of a contract, where the writing, signed by the defendant, was not delivered back to defendant with plaintiff's signature?

"The lower court answered 'No'.

"Plaintiff and appellant contends the answer should be 'Yes'.

"2. Did the contract of employment between plaintiff and defendant (as evidenced by plaintiff's exhibit 1) satisfy the requirement of mutuality?

"The lower court answered 'No'.

"Plaintiff and appellant contends the answer should be 'Yes'."*

Thus was Judge Holbrook left to ferret out and brief the right of plaintiff's case, and thus was he led to belief (as was the present writer on first impression of the case) that the rule of *Wilkinson* v. *Heavenrich,* 58 Mich 574 (55 Am Rep 708) called for holding that the agreement of the parties was wanting of mutuality in that Mr. Fothergill was never bound to do that which formed the consideration for defendant's promise.

Nevertheless, all this considered, it is clear that plaintiff did make out, *as against defendant's motion for directed verdict made at close of his proofs,* an apparent case for recovery of the amount he would have earned—during the orally and validly agreed termination period—had defendant given him the stipulated notice of termination. This put the de-

---

* The statement of "issues," appearing in the opinion of Mr. Justice SMITH, varies from this in that it includes subtopical quotations appearing in the body of plaintiff's brief. The above is a correct transcript of that which appears per Court Rule No 67 (1945) "on the first page" of plaintiff's brief.

fendant partnership to its pleaded defenses and required denial of its motion for peremptory verdict. I concur in reversal and remand for new trial.

SMITH, J. In any case (such as this) where one man has worked for another in apparent harmony over a period of years, he who would resist further performance in accordance with the terms of the agreement they have lived under, or damages in lieu thereof, on the ground of noncompliance with the statute of frauds, has a heavy burden of persuasion to carry. We are not persuaded that it has been carried.

There is no need to re-state all of the facts. It is important, however, to note (according to the view of the testimony favorable to the plaintiff, against whom a motion for a "directed verdict" was granted) that plaintiff Fothergill originally worked for defendant under the terms of a verbal understanding reached in December of 1953. As plaintiff testified, "It was all understood verbally although it wasn't in writing." The understanding included an escape clause: Either party might terminate the relationship upon 6-months' notice. Fothergill testified: "I was coming to another country, I had my wife and family to think of, I thought I had a 6-month period, give me an opportunity to look for another job if worse came to worse." In March of 1955, Fothergill was tendered what was captioned an "Agreement." It purported on its face to be "in confirmation of a verbal agreement made in December, 1953, and in consideration of the mutual covenants herein." It contained the above described 6-months' termination clause. It had already been signed on behalf of McKay Press, and it was requested that after Fothergill had signed, and at his convenience, it be returned to them. Fothergill signed it, he testified, after about 3 weeks, but the

agreement, thus signed, was never returned to Mc-Kay, as requested, although the record is silent as to any insistence by McKay that it actually be returned to them or that they regarded its nondelivery as important.[1] The legality of Fothergill's discharge in 1957, in asserted violation of the 6-months' clause, is the issue presented. Defendant was successful below, as above indicated.

The appellant raises the following issues (accepted "for purposes of argument"[2] by appellee):

"1. Did plaintiff's exhibit 1 satisfy the requirements of the statute of frauds, as a 'memorandum' of a contract, where the writing, signed by the defendant, was not delivered back to defendant with plaintiff's signature?  *  *  *

"(1) Was plaintiff's exhibit 1 a 'memorandum'?  *  *  *

"(2) Did plaintiff's failure to sign the memorandum in the presence of defendant's manager impair the sufficiency of that writing as evidence of the 1953 employment contract?  *  *  *

"(3) Did plaintiff's failure to deliver or return the memorandum to defendant destroy the memorandum's value as evidence of the 1953 employment contract?"

"2. Did the contract of employment between plaintiff and defendant, as evidenced by plaintiff's exhibit 1, satisfy the requirement of mutuality?"

The issue presented in this case is whether or not the contract of employment is enforceable. McKay

---

[1] Fothergill described the situation in this way:

"I didn't think for one minute I couldn't depend on that contract. I didn't have to go any further with it. It was forgotten and it was never brought to the attention of Mr. Hopkins, or vice versa. He never asked me and I never brought it up either."

[2] McKay Press states the questions involved as follows:

"Defendant and appellee considers that the questions involved are—first, was there a valid oral agreement? and second, was there a valid written agreement? However, for purposes of argument, appellee accepts appellant's statement of questions involved and will discuss in that order."

Press says that it is for a 5-year term (with this view the trial court agreed)[3] and requires a note or memorandum thereof for enforceability, since it is not in writing. It denies that a valid note or memorandum exists. Fothergill, on the other hand, asserts that such note or memorandum is found in the "Agreement" signed by both parties.

Underlying the controversy, then, is this issue, as phrased to us by the appellee: Was the alleged con-

---

3 "*By the Court:*  *  *  *  Now, as to the oral agreement being possible of performance within 1 year, there are numerous cases which state an agreement to take care of a person for lifetime, or of an open-end lease cancelable by 6-months' notice, and other similar agreements, are possible of performance within the year and therefore not within the statute. But there is no Michigan case, as the court can find, on the point where a greater length period is mentioned than the 1-year period, when the cancelable notice or termination notice provides less than a year, whereby the Supreme Court has ruled that that is within the statute also. However, it would appear to the court that the same analogy should apply to a case of this kind of employment as would apply to a lease. A written lease for more than 1 year must be in writing. The court does not believe that the provision therein for cancelation by notice of less than 1-year's notice would carry it within the purview, or without the purview of the statute. 49 Am Jur, Statute of Frauds, § 33, pp 393, 394, states as follows:

"'It is the general rule that the fact that either of the parties may have an option to put an end to a contract within a year does not take it out of the operation of the statute if, independent of the exercise of such a power, the agreement cannot be performed within a year. The fact that the contract may be terminated or further performance rendered impossible does not take it out of the statute. To be discharged from liability under a contract is not to perform it; when once the contract exceeds the year, the circumstance that it is defeasible will not make it other than a contract for more than a year. Furthermore, it cannot be said that the agreement would be fully performed by its termination under the option, but rather that in such an event, the performance of the agreement was frustrated.' Then it goes on and says: 'Of course, if no definite time for the duration of the contract is fixed and it may be terminated at will or by a certain notice, which will permit of its termination within a year, it is not within the statute.' So, that is directly the court interpretation of the law as to a lease. In other words, if it is an open end, if it is an indeterminate period of time, possible of completion within the year, then it is without the statute, but if it is a period of time mentioned in the lease, or in the contract for employment of more than 1 year, then it cannot be completed within the year and the courts have construed it to mean that the contract has been frustrated by the act of one party, or the other party, legally within the terms of the agreement."

tract "herein declared upon  *  *  *  for a term of
5 years and not capable of complete performance
within a period of 1 year, hence void under the stat-
ute of frauds"?  Absent such issue the note or memo-
randum question does not arise.  The validity of the
oral agreement is basic to the positions of both par-
ties, indeed, it is of the essence of the controversy
itself.

This is the question that must first be faced by
any court considering the note or memorandum issue.
It was considered, and ruled upon, by the trial court
and must and will be considered and ruled upon by
such court upon remand.  It cannot be avoided.  It
is implicit in the issues presented and we will con-
sider it.

It is suggested to us that the case is controlled
by *Wilkinson* v. *Heavenrich,* 58 Mich 574 (55 Am Rep
708).  We cannot agree.  The *Wilkinson Case* is com-
pletely inapplicable on its facts and thus without
value as precedent.  Wilkinson went to work under
an attempted (but defective) bilateral written con-
tract purporting to prescribe an unconditional 3-year
term of employment.  He, however, had made no
such commitment.  As the court put it (p 576) : "Mr.
Wilkinson was not bound to stay 3 years, and
Heavenrich Bros. & Company could not be bound
to keep him 3 years."  In addition, no note or memo-
randum was ever executed by both parties.  Here, on
the other hand, the trier of the facts would be justi-
fied in finding that Fothergill went to work under
an oral contract fully descriptive of the mutual duties
and obligations of the parties, for a period of time
terminable upon 6-months' notice by either party,
expressive of which either a later written contract,
or memorandum thereof, had been executed by both
parties.  The language quoted from *Wilkinson* has
legal significance only in respect of the material facts
concerning which it was uttered.  It is law only as

to those facts. It cannot control decision here, however apt it may be within its proper context.

As we construe the trial court's opinion, it is not denied that an oral agreement had, in fact, been reached. The difficulty with the oral agreement was thought to be that it was offensive (as regards enforceability) to the statute of frauds. Upon the assumption that it was a 5-year contract of employment it was, of course, unless there was "some note or memorandum thereof  *   *   *  in writing and signed by the party to be charged therewith."[4] But we have noted the escape clause, providing for termination at any time upon 6-months' notice. Is a contract for a maximum of 5 years, but terminable by either party upon 6-months' notice, the same contract (respecting its term) as an unqualified, unconditional 5-year contract? If it is the former, it will be noted that this is not the situation where one of the parties is relieved of his duty of performance by operation of law, arising out of some contingency despite and independently of the terms of the agreement. Rather, in the words of the New York court,[5] the permission (to terminate) is a part of the agreement itself. "The contract could be performed in either of 2 ways: 1. By performance according to its terms without exercising the option. 2. By performance according to its terms until June and then exercising the option. By either mode the contract would be fulfilled in a sense originally contemplated by the parties, and by neither would performance be frustrated, because the contract would be executed in a way that the parties agreed that it might be executed. The contingency did not defeat the contract, but simply advanced the period of fulfillment." With this holding should be considered, with other related

---

[4] CL 1948, § 566.132 (Stat Ann 1953 Rev § 26.922).

[5] *Blake* v. *Voight*, 134 NY 69, 72, 73 (31 NE 256, 30 Am St Rep 622).

authority, our decision in *Sax* v. *Detroit, G. H. & M. R. Co.*, 125 Mich 252 (84 Am St Rep 572), where the plaintiff testified that the agreement was to give him a permanent position during his lifetime, so long as he should perform his duties to the satisfaction of the company, and it was held that such contract need not be in writing, since it might have been performed according to its terms within a year. The above citations are merely representative of the authorities.[6] The determination thus to be made, in the light of all of the facts and circumstances, is basic to decision in this case and the textual material bearing thereon quoted by the trial judge is incomplete and insufficient to answer the questions presented. If the contract may, according to its terms, be performed within a year no statute of frauds question arises.

Should, however, the determination be made that the statute of frauds does in fact apply, a further question will be presented. This pertains to the memorandum allegedly made. It will be recalled that over a year after Fothergill's entry upon his duties a writing was prepared, and tendered him, entitled "Agreement." This, Fothergill testified, was represented to him to be a memorandum of the oral agreement formerly reached. It named and identified the parties, and specified the duration of employment, duties, and salary to be paid. The favorable view of the evidence is that it was signed by both parties. Why was this instrument not a sufficient memorandum to answer the requirement of the statute? Appellee argues, in part, that it "was not a memorandum but rather represented a proposed

---

[6] Analogous in principle to the voluntary-termination contract here under consideration are those cases involving lifetime contracts. *Smalley* v. *Mitchell*, 110 Mich 650; *Adolph* v. *Cookware Company of America*, 283 Mich 561. Such have been held not within the statute of frauds since, in view of the uncertainties of human life, they may be performed fully, in accordance with their terms, within 1 year.

contract between the parties, complete in all respects." This circumstance, if true, would only add to its strength as a memorandum, not detract therefrom. Normally a memorandum need be only that. It is sufficient if the obligations of each party may be determined from it. It need not have the minutiae of a contract. Mr. Justice Cardozo refers to it as a "token,"[7] and so, indeed, it is. But it is no less a token because it purports to be more.

So far as the problem of delivery-back of the "Agreement" has any bearing upon any aspect of the case, this request was apparently made on behalf of McKay Press when the "Agreement" was tendered to plaintiff. "Mr. Hopkin's" plaintiff testified, "told me if I wanted to sign it any time and then hang on to it and then hand it back to him, fine." But Fothergill did not return it. He signed it and then, he says, "I put it in my drawer at home; it was never spoken to about by Mr. Hopkins, McKay Press or myself, never brought up until now."

Assuming, then, that delivery-back of the "Agreement" was relevant for some purpose, and assuming, as well, that it was the expressed intent that the "Agreement" was to have no legal force and effect without delivery-back, was failure to deliver-back fatal to its legal efficacy, or was there a waiver by McKay Press of redelivery? Waiver, of course, is a matter of intent, and will be so determined by the trier of the facts, but it is pertinent to observe that Fothergill worked for McKay Press about 1-1/2 years before, and for approximately 2 years after, the "Agreement" was tendered him, performing substantially the same duties throughout, and not one word was said to him about his failure to make redelivery. He was entitled to assume, and the defendant was equally entitled to assume, that the working

---

[7] *N.E.D. Holding Company, Inc.,* v. *McKinley,* 246 NY 40, 45 (157 NE 923).

terms and conditions were mutually understood and satisfactory and that the condition of the redelivery (if, in truth, it was a condition) had been waived. A party may not hold his peace as to an omission which his mere reminder could cure, accepting in silence, without complaint or objection, another's performance of prescribed duties despite the omission, and thereby fashion a trap to be sprung upon his apparently satisfactory cocontractor at an opportune moment.

Reversed and remanded.    Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.