CONEL DEVELOPMENT, INC. v RIVER ROUGE SAVINGS BANK

Docket No. 30221. Submitted April 6, 1978, at Detroit.—Decided July 5, 1978. Leave to appeal applied for.

Conel Development, Inc. entered into a contract with Underground Television Inspection by Seaway, Inc. in connection with improvements to be made in a land development in Iosco County. Upon a failure of performance, Conel brought an action against River Rouge Savings Bank, Underground Television, William Brewer, Shirley A. Brewer, and Charles F. Dorris for damages for breach of contract. River Rouge Savings Bank was alleged to be a surety for Underground Television, whose directors were the individual defendants. The individual defendants were eventually dismissed by stipulation and the case was divided into two jury trials, the first with respect to liability, the second as to damages. The Wayne Circuit Court, Blair Moody, Jr., J., entered judgments upon jury verdicts holding River Rouge Savings Bank liable to plaintiff and assessing damages against both the bank and Underground Television. The bank appeals, alleging the trial court erred in not requiring a special verdict, that it should not have been held liable on the contract, and challenging the sufficiency of the evidence. *Held:*

1. The trial court did not err by not requiring a special verdict. The parties stipulated on the record that they would take a general verdict and such a stipulation, when approved by the court, acts as a waiver of any objection the parties might have to the taking of a general verdict.

2. Defendant bank claimed the statute of frauds as a defense to being held liable as surety for Underground Television.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Stipulations § 8.
   75 Am Jur 2d, Trial § 468.
[2] 28 Am Jur 2d, Estoppel and Waiver § 1.
[3] 73 Am Jur 2d, Statute of Frauds § 565.
   Promissory estoppel as basis for avoidance of statute of frauds. 56 ALR3d 1037.
[4, 5] 4 Am Jur 2d, Appeal and Error § 533.
[5] 4 Am Jur 2d, Appeal and Error § 76.

There was sufficient evidence, however, which, if believed by the jury, would support a finding that the bank agreed to act as surety and to support a finding of estoppel circumventing the statute of frauds defense.

Affirmed.

1. Trial—Special Verdict—General Verdict—Discretion—Abuse —Stipulation of Parties—Waiver of Objections—Court Rules.

A trial court's failure to require a special verdict pursuant to a written request of a defendant is not error where the record does not indicate an abuse of the trial court's discretion and where counsel for both parties stipulated on the record to take a general verdict rather than the special verdict; the stipulation did not deprive the court of its discretion to require a special verdict but, when approved by the court, became binding on the parties as a waiver of any objection they might have to the taking of a general verdict (GCR 1963, 514).

2. Estoppel—Definitions—Words and Phrases.

Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts.

3. Estoppel—Statute of Frauds—Question of Fact—Appeal and Error—Sufficiency of Evidence.

The question of whether a plaintiff may overcome a defense based on the statute of frauds by claiming estoppel is a question of fact; on review of a verdict for the plaintiff the question is whether there was sufficient evidence which, if believed by the trier of fact, would support a finding of estoppel sufficient to circumvent the statute of frauds.

4. Appeal and Error—Instructions to Jury—Objection—Preserving Question—Court Rules.

A party must indicate on the record his objection to a trial court's instructions to the jury in order to preserve the issue for appeal (GCR 1963, 516.2).

5. Appeal and Error—Jury—Findings of Fact.

A jury's findings are not to be upset absent a claim of instructional error or a claim of a specific instance of an improper appeal to prejudice or passion.

*Farber & Downs, P. C.,* for plaintiff.

*Anthony J. Knerly,* for defendant River Rouge Savings Bank.

Before: M. J. KELLY, P. J., and D. E. HOLBROOK, JR., and BEASLEY, JJ.

BEASLEY, J. On February 25, 1971, plaintiff, Conel Development, Inc., a Michigan corporation with its principal place of business in Iosco County, filed a five count complaint against defendants, River Rouge Savings Bank, hereinafter referred to as RRSB, Underground Television Inspection By Seaway, Inc., hereinafter referred to as UTV, and three individual defendants, William R. Brewer, Shirley A. Brewer and Charles F. Dorris, seeking damages for alleged breach of a contract to construct roads, install underground drainage lines and make other improvements in developing Lakewood Shores, near Oscoda, in Iosco County.[1]

Count I alleged a joint venture between defendants RRSB, UTV and Brewer to share in the performance and profits of the Conel contract, so as to make defendant RRSB liable for defaults under the contract. Count IV alleged defendant RRSB agreed to be surety for and to guarantee performance by UTV. Count V alleged defendant RRSB fraudulently misrepresented to plaintiff regarding defendants UTV and Brewer to induce plaintiff to enter into the original 1968 contract.

---

[1] The original contract, dated June 7, 1968, was between plaintiff, the subdivider and land developer, and defendant UTV, a construction contractor allegedly specializing in sewer inspection by television. In February of 1969, defendants UTV and Brewer left the Oscoda job site amid charge and counter-charge of breaking the contract. UTV sued plaintiff and defendant RRSB, which suit was settled in October, 1971, by plaintiff paying $5,000 to Brewer and defendant RRSB paying $18,000 to UTV.

Upon these allegations and theories, plaintiff sought damages, both compensatory and punitive. Eventually, in 1975, the case against the three individual defendants was dismissed with prejudice by stipulation.

By stipulation, the case was divided into two jury trials, the first with respect to liability and, after the first jury found for plaintiff against defendant RRSB, a second, in which a jury awarded plaintiff $800,000 in damages against both defendants RRSB and UTV. Defendant RRSB's motions for judgment notwithstanding the verdict after each verdict were denied by the trial judge in written opinions. Defendant RRSB now appeals as of right.

On appeal, defendant bank claims the trial court should have required a special verdict. The record indicates that defendant bank filed a written request for a special verdict.[2]

GCR 1963, 514 affords the trial court discretion to require special verdicts and spells out the procedure for their application. Prior to adoption of the 1963 General Court Rules, Michigan permitted both general verdicts with special questions and the alternative special verdicts in lieu of a general verdict. GCR 1963, 514 eliminated authorization of general verdicts with special questions as a matter of right, but retained discretion in the trial judge to require a special verdict in which case there

---

[2] Defendant bank entitled this part of its request for jury instructions, "Request For Special Verdict", consisting of 15 questions that the jury was to be required to answer. Presumably, defendant bank intended the trial judge to attempt to sort out the answers and arrive at a verdict. The double-barreled nature of some of the questions would have made it difficult to find a verdict for plaintiff. For example:

"10. If you answer yes to question 8, do you find as a matter of fact that such promise was made in addition to the promise of Underground Television to Conel Development under the contract of June 7, 1968 and that the Bank received no benefit from such a promise."

was no general verdict.[3] In this case, counsel for the parties expressly stipulated on the record, in open court, to take a general verdict rather than the special verdict defendant bank had earlier requested.[4] While this stipulation did not deprive the trial judge of his discretion to require a special verdict, it was in the nature of a bargain between the parties and became, when approved by the court, binding on both parties as a waiver of any objection they might have to the taking of a general verdict.[5]

In his brief on appeal, counsel for defendant bank goes outside the record to assert the trial court "indicated it would absolutely not grant appellant's request for a special verdict under any circumstances". Apparently, counsel for defendant is attacking the enforceability of his own stipulation on the ground that he was making the best of a bad situation; namely, defense counsel believed the judge would deny his motion for special ver-

---

[3] 2 Honigman & Hawkins, Michigan Court Rules Annotated, p 503, note 3; GCR 1963, 514; *see, Ketola v Frost,* 375 Mich 266; 134 NW2d 183 (1965), and particularly, fn 4 on p 274.

[4] The transcript states as follows:

"MR. CRAIG: Your Honor, I offer the following stipulation. I offer to stipulate that the Plaintiff will waive its right or claim of punitive damages or statutory damages arising out of the claim of fraud. In consideration for us making that stipulation it is the Defendant's agreement to take a general as opposed to a specific verdict on the question of fraud.

"MR. KNERLY: So stipulated.

"THE COURT: Fair enough."

[5] While the agreement between the parties was not binding on the trial judge, it certainly is not assignable error that he refused to honor the request of defendant bank for a special verdict after defendant bank's express withdrawal of that request.

Courts ordinarily look with favor on stipulations designed to simplify, shorten or settle litigation and save costs to the parties. Such stipulations should be encouraged by the courts rather than discouraged and enforced by them unless good cause is shown to the contrary. *Ball v Ex-Cell-O Corp,* 52 Mich App 550, 554; 218 NW2d 85 (1974), *Dana Corp v Employment Security Commission,* 371 Mich 107, 110; 123 NW2d 277 (1963), 83 CJS, Stipulations, § 2, pp 2–3.

dicts. This type of extra-judicial argument is deplorable.[6] If defense counsel wished to make this argument, he should have put his claim on the record in open court before the case went to the jury. Nothing in the record indicates defendant preserved for appeal an issue regarding a special verdict. No objection was made to the form of the verdict. Only after the jury rendered a verdict for plaintiff, did defendant raise this issue. Furthermore, the record does not indicate that there would have been an abuse of discretion if the trial court had denied a request for a special verdict. We reject this claim of defendant as being totally without merit.

Defendant bank claims it should not have been held liable under a contract which it did not sign. Defendant bank says that neither the plaintiff's theories of liability, namely, suretyship, joint venture or fraud, nor the evidence supporting these theories was sufficient to support the judgment. In this connection, defendant bank also claims that denial of its preliminary motions for accelerated judgment[7] and later, for summary judgment,[8] hampered and improperly defeated its efforts to defend against plaintiff's claims. From the record, it is not readily apparent as to who was the major culprit for the lengthy delay in bringing this case to trial.

---

[6] In his opinion in response to defendant's motion for judgment notwithstanding the verdict and for new trial, the trial judge said:

" * * * Counsel cannot now assert that a special finding should have been requested of the jury. The Court's memory recalls it was specifically raised in discussion and waived and rejected by the parties before the Court's instructions were given."

[7] On July 12, 1971, defendant bank filed a motion for accelerated judgment primarily based on alleged application of the statute of frauds. Answer was filed, oral argument had, and on August 12, 1971, an order entered denying the motion.

[8] On June 6, 1974, defendant bank filed a motion for summary judgment under GCR 1963, 117.1 and 117.2(1) and (3). On June 21, 1974, an order was entered denying that motion.

However, it is quite clear that this is another case where the parties discovered each other to death; certainly, the dreams of the professors that the great broadening of the discovery rules in 1963 would serve the cause of justice was not realized in this case.[9]

The motion for accelerated judgment was based upon a claim that another similar action between the same parties was pending and a claim that the action was barred by the statute of frauds, citing GCR 1963, 116.1(5). Defendant bank accompanied its motion with a document entitled "Memorandum of Authorities, Fact and Argument in Support of Motion for Accelerated Judgment and Other Relief". This document, which is replete with argumentative adjectives, claims reliance upon MCL 566.132 and 566.135; MSA 26.922 and 26.924. Plaintiff denied that its claim contravened the statute of frauds and filed a memorandum supporting its position. Denial by the trial court of defendant's motion was not clearly erroneous.

Defendant bank's motion for summary judgment was accompanied by a brief and memorandum of authority. Plaintiff filed a reply memorandum of authority, which essentially asserted defendant's motion was an argument regarding the facts. The trial court held with plaintiff and denied the motion for summary judgment. We decline to find the trial court's ruling in denying the motion was clearly erroneous.

Defendant bank then filed one of several inter-

---

[9] There were many, many pages of depositions of many parties filed in this case. We will not estimate the added cost of the discovery to the other costs of the litigation. Whether it was necessary is, at best, conjectural. The questions are, will the exorbitant cost of discovery relegate late 20th century trials to the role of the dinosaur, and does exhaustive, seemingly endless, discovery contribute to a more just result?

locutory motions for leave to appeal with the Court of Appeals, which motions were denied.[10]

With respect to plaintiff's theory that defendant bank acted as a surety or guarantor, there was testimony which, if believed, supported such a conclusion. Defendant bank claims a writing was necessary if the suretyship issue was to be submitted to the jury. Based upon the statute of frauds, this claim was raised in defendant bank's July 17, 1974, interlocutory application for leave to appeal, which was denied by this Court.

However, in the present appeal as of right, the issue has been reduced to collateral status because of the general nature of the verdict and the possibility that the jury found for plaintiff on the basis of one or both of the alternative theories of liability. Nevertheless, we give consideration to the statute of frauds issue.

MCL 566.132(2); MSA 26.922(2) requires that every agreement to answer for the debt or default of another be in writing and signed by the party to be charged. The only writing in the within case evidencing a promise by the defendant bank was an introductory letter given by defendant bank to UTV president Brewer vouching for Brewer's character and integrity. Defendant RRSB argues that this letter alone can not satisfy the statute of frauds requirement for a surety arrangement.

To overcome the statute of frauds defense, plaintiff relies on an estoppel theory. Estoppel arises where a party, by representations, admissions or

---

[10] Much later, in 1974, defendant bank filed a petition for leave to file interlocutory appeal which was denied by this Court on September 13, 1974, for various reasons, one of which was application of the so-called 18-month rule provided in GCR 1963, 806.2 which provides: "In no event shall leave to appeal be granted later than 18 months from entry of the order or judgment appealed from in any civil matter."

silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts.[11] Where a plaintiff alleges estoppel to circumvent the statute of frauds, a question of fact is raised which must be resolved at trial by the trier of fact.[12] The question on review becomes: Was there sufficient evidence, which, if believed by the trier of fact, would support a finding of estoppel sufficient to circumvent the statute of frauds?

Carl Brownell, president of plaintiff company, testified that he would not have proceeded with any agreement with UTV without a performance bond, had he not received assurances from defendant bank's vice president, Fay Wilber, as to the reliability of UTV as a contractor. After Brownell's telephone conversation with Wilber regarding UTV's president Brewer, Brownell immediately began contract negotiations with Brewer, culminating in the contract now in dispute. It also appears that another officer of the bank was actively participating in the running of UTV's financial operations. Brownell testified:

"They had Kassel running his business down below, coming up to collect the checks, issuing credit memos and Kassel told me that the bank really wanted him to have this job because of the money he would make off of it which would reduce the additional debt that he had with the bank which I didn't know he had of some $64,000.00 and everything—all the people that I was involved with which would be Brewer and Kassel, the

---

[11] *Hetchler v American Life Insurance Co,* 266 Mich 608, 613; 254 NW 221 (1934), *Schudlich v Yankee,* 272 Mich 482; 262 NW 395 (1935), *Postal v Home State Bank,* 284 Mich 220; 279 NW 488 (1938).

[12] *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416; 205 NW2d 504 (1973).

way they operated indicated that the bank was running the operation."

Kassel was a vice president of defendant bank. UTV president Brewer testified:

"Well, the bank offered to personally guarantee me on the job. In other words, when Mr. Kassel, first off, told Mr. Brownell in his office, he pulled out one of his cards that had Vice President on it and he told Mr. Brownell, he said, 'I don't know what you are worried about a bond for when you got the River Rouge Savings Bank behind this man with assets of . . . ', I don't know, he quoted a figure but I don't know what it was."

On review of the whole record, we are convinced that there was sufficient evidence presented which, if believed by the jury, would support a finding that defendant bank agreed to act as surety for UTV and sufficient to support a finding of estoppel circumventing defendant bank's statute of frauds defense.[13]

We are also satisfied that there was sufficient evidence to support sending to the jury and instructing the jury regarding plaintiff's alternative theories of joint venture and fraudulent misrepresentation.

Defendant's other issues on appeal are essentially defendant's disagreements with the jury's findings and its claim that the verdict was against the great weight of the evidence. Defendant made no objection to the trial judge's instruction to the jury on the law. GCR 1963, 516.2 places the burden on counsel to indicate on the record his specific objection to the charge. Only by so doing, does

---

[13] The trial court instructed the jury fully regarding this issue without objection by defendant RRSB.

he preserve his right to raise the issue on appeal.[14] There was ample and sufficient evidence which, if believed, supported each jury's verdict.

In the absence of a claim of instructional error, or a claim of an improper appeal to prejudice or passion, neither of which is here claimed, the jury's findings are not to be upset.[15]

Affirmed, with costs.

---

[14] The reference is to the first trial on the liability of defendant RRSB issue. In the second trial, counsel for defendant made two objections to the charge. Review indicates that the trial court granted the request regarding depth of the stumps and denied the request relating to the Plat Act. We do not find the instruction objected to clearly erroneous.

[15] Defendant, RRSB, makes a broad assertion that the size of the verdict indicates prejudice or passion, but indicates no specific instance of an improper appeal to prejudice or passion. This is insufficient. *Carreras v Honeggers & Co, Inc,* 68 Mich App 716, 729; 244 NW2d 10 (1976), *Stowers v Wolodzko,* 386 Mich 119, 141; 191 NW2d 355 (1971).