ROWE v NOREN PATTERN & FOUNDRY CO.

Docket No. 78-2059. Submitted March 7, 1979, at Grand Rapids.—
Decided July 10, 1979. Leave to appeal applied for.

Defendant, Noren Pattern & Foundry Co., offered a job to plaintiff, Reginald Rowe, who was a longtime employee of another foundry and was within 1-1/2 years of having his pension vest. Plaintiff was told he would have to become a member of the union after 45 days. Plaintiff quit his job and went to work for defendant, but his employment was terminated after 43 days. Plaintiff sued defendant, alleging an oral contract of employment. The Muskegon Circuit Court, Frederic A. Grimm, J., granted a directed verdict for defendant at the close of plaintiff's proofs for the reasons that ·the contract violated the statute of frauds and was a contract for permanent employment, which is a contract at will terminable with or without cause by either party at any time. Plaintiff appeals. *Held:*

1. An oral contract which is capable of being completed in less than one year is not violative of the statute of frauds even though it is clear that in all probability the contract will extend for a period of years. Plaintiff's contract with defendant was conceivably capable of being completed within one year and is not violative of the statute of frauds.

2. A contract for employment for an indefinite period, in the absence of some special consideration passing from the employee to the employer, is terminable at the will of either party. An employee under such a contract may be terminated with or without cause, the decision being solely within the determination of the employer, however, this rule does not apply to a situation where an employer lured an employee away from employment on which he was 1-1/2 years away from having his pension vest to a job in which he was to have

References for Points in Headnotes

[1] 73 Am Jur 2d, Statute of Frauds § 533.

Performance as taking contract not to be performed within a year out of the statute of frauds. 6 ALR2d 1053.

[2, 3] 53 Am Jur 2d, Master and Servant §§ 17, 27, 32-34.

Validity and duration of contract purporting to be for permanent employment. 60 ALR3d 176.

the protection of union membership after 45 days and to which he would not have switched but for the guaranty of the protection of a union contract.

Reversed.

MacKenzie, J., dissented. She would hold that the contract was an employment contract for an indefinite period terminable at will by either party until the protection of the union contract attached and that plaintiff's giving up his prior job with its attendant benefits was not a bargained-for benefit to defendant to qualify under the exception to the rule. She would affirm.

### OPINION OF THE COURT

1. FRAUDS, STATUTE OF — ORAL CONTRACTS — COMPLETION WITHIN ONE YEAR.

An oral contract which is capable of being completed in less than one year is not violative of the statute of frauds even though it is clear that in all probability the contract will extend for a period of years.

2. MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — EMPLOYMENT AT WILL — TERMINATION OF EMPLOYMENT.

A contract for employment for an indefinite period, in the absence of some special consideration passing from the employee to the employer, is terminable at the will of either party; an employee under such a contract may be terminated with or without cause, the decision being solely within the determination of the employer; however, this rule does not apply to a situation where an employer lured an employee away from employment on which he was 1-1/2 years away from the vesting of his pension to a job in which he was to have the protection of union membership after 45 days and to which he would not have switched but for the guaranty of the protection of a union contract and terminated the employment after 43 days.

### DISSENT BY MacKENZIE, J.

3. MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — TERMINATION OF EMPLOYMENT.

*A contract for employment for an indefinite term, absent some special consideration passing from the employee to the employer, may be terminated by either party at any time for any reason, and an employee serving under such a contract has no cause of action for damages for wrongful discharge; the giving up, by the employee, of his prior position and its attendant*

*benefits is not a bargained-for benefit to the employer sufficient
to serve as such consideration.*

*Norman C. Halbower, P.C.,* for plaintiff.

*Colling, Silky & Kobza* (by *Thomas L. Riegler),*
for defendant.

Before: R. B. Burns, P.J., and Allen and Mac-
Kenzie, JJ.

Allen, J. At the conclusion of plaintiff's proofs
in a trial by jury on plaintiff's claim against
defendant for breach of an oral contract of employ-
ment, defendant's motion for a directed verdict
against plaintiff was granted. In granting the mo-
tion on May 3, 1978, the trial court stated it found
*Toussaint v Blue Cross & Blue Shield of Michi-
gan,* 79 Mich App 429; 262 NW2d 848 (1977),
controlling and that plaintiff's claim should be
denied because the contract (1) was for more than
one year and therefore was in violation of the
statute of frauds, and (2) was a contract for perma-
nent employment which, under Michigan law, is a
contract at will terminable with or without cause
by either party at any time. Plaintiff appeals of
right.

To the extent that the trial court granted the
directed verdict on the basis of the statute of
frauds defense, we find error. While it is true that
the contract of employment was intended to con-
tinue for more than one year, it is also true that,
technically speaking, it could have been performed
within one year. Plaintiff testified that when de-
fendant sought his services he was told that after
he had worked for defendant for 45 days he would
become a member of the union, after which he
could only be fired for just cause. At another point,

plaintiff testified he was informed "that the only way I would get laid off is if the company closed down". Since the company could have been closed down within one year or since plaintiff could have performed his assigned duties so poorly as to give his employer just cause to discharge him, the contract of employment could have been for less than a year.

Where an oral contract may be completed in less than a year, even though it is clear that in all probability the contract will extend for a period of years, the statute of frauds is not violated. *Fothergill v McKay Press,* 361 Mich 666, 668; 106 NW2d 215 (1960), quoted with approval the following language from *Smalley v Mitchell,* 110 Mich 650, 652; 68 NW 978 (1896):

"The mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that *if, by any possibility, it is capable of being completed within a year, it is not within the statute,* though the parties may have intended and thought it probable that it would extend over a longer period, and though it does so extend." (Emphasis supplied.)

Furthermore, it appears that under the rationale of *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416, 419-420; 205 NW2d 504 (1973), and *Conel Development, Inc v River Rouge Savings Bank,* 84 Mich App 415, 423; 269 NW2d 621 (1978), plaintiff's giving up of his prior job where he had been employed for 13-1/2 years, and his soon-to-vest retirement benefits constituted a reliance sufficient to circumvent the statute of frauds, at least by raising a question of fact to be resolved by the jury.

The question of whether the trial court was

correct in concluding that the oral agreement was for employment of indefinite duration and, as such, was a contract terminable at will, is more difficult to resolve. In Michigan, as well as in a majority of states, the rule is well established that, in the absence of some special consideration passing from the employee to the employer, other than the services to be performed by the employee, a contract for employment for an indefinite term is a contract which may be terminated at any time by either party for any reason or for no reason at all. *Lynas v Maxwell Farms,* 279 Mich 684, 689; 273 NW 315 (1937), *Adolph v Cookware Co of America,* 283 Mich 561, 568; 278 NW 687 (1938), *McLaughlin v Ford Motor Co,* 269 F2d 120, 125 (CA 6, 1959), *Percival v General Motors Corp,* 539 F2d 1126 (CA 8, 1976), *Milligan v The Union Corp,* 87 Mich App 179; 274 NW2d 10 (1978). *Cf.* Anno: *Employee's arbitrary dismissal as breach of employment contract terminable at will,* 62 ALR3d 271. Further, in a majority of jurisdictions, relinquishment by the employee of a job, business or profession in order to accept the new position of permanent employment does not constitute special consideration sufficient to support the contract.[1] Anno: *Validity and duration of contract purporting to be for permanent employment,* 60 ALR3d 226, 264-266, *Lynas, supra, Adolph, supra.*

But, because the rule is sometimes harsh and offers opportunities for arbitrary dismissal, the courts have been quick to find exceptions. As is stated in Anno: *"Validity and duration of contract*

---

[1] Admittedly, there are cases to the contrary. Relinquishment of prior employment has been held sufficient consideration to support a contract for permanent employment in *Jones v Carolina Power & Light Co,* 206 NC 862; 175 SE 167 (1934), *Millsap v National Funding Corp of California,* 57 Cal App 2d 772; 135 P2d 407 (1943), 60 ALR3d 268, *supra.*

*purporting to be for permanent employment",* 60
ALR3d 226, 232:

> "Notwithstanding the above-stated rule that an em-
> ployment contract which is indefinite as to duration
> will be considered terminable at will, many courts will
> hesitate to hold an employment contract unenforceable
> merely because it fails to specify a term of employment.
> Before holding an employment contract indefinite for
> such a reason, *the courts will look to the intention of
> the parties for clues as to the intended duration of the
> contract, this understanding and intent of the parties to
> be ascertained from the written and oral negotiations of
> the parties, business custom and usage, the situation of
> the parties, the nature of the employment, and the
> particular circumstances of the case."* (Footnotes omit-
> ted, emphasis supplied.)

Likewise, an exception to the rule is recognized
where it is clear that the employer knew at the
time of the hiring that the employee would not
have left his former position except for the offer of
a permanent position. 60 ALR3d 267 and cases
cited. Thus, where the job which is given up is
"tenured" or permanent and the new job offer is
also tenured or permanent, special consideration is
found to exist. *Collins v Parsons College,* 203
NW2d 594 (Iowa, 1973).

This brings us to the key issue. Does the situa-
tion in the case before us fall within the general
rule or within one of the exceptions? Or, stated
another way, is the instant employment contract a
*Toussaint v Blue Cross* or *McLaughlin v Ford
Motor Co* situation, or is it something else? We
conclude it is something else.

Plaintiff's testimony was clear and straightfor-
ward. He stated that for 13-1/2 years he was the
"fix-it man of all types" in charge of maintenance
work at Muskegon Aluminum where he was paid

$4.52 an hour working 50 to 60 hours a week. He stated that he was close to having a vested pension with only a year and one-half remaining before his pension vested; that without any solicitation from him, Nils Bodman, an employee of defendant Noren Pattern & Foundry Company (Noren), contacted him saying that Noren needed a maintenance man and "how much better they could do" him; that he was contacted by Bodman three or four times until finally a meeting was arranged at the Noren plant where Bodman introduced plaintiff to Jim Surge, personnel manager at Noren; that Noren was particularly interested in whether plaintiff knew how to keep a Hunter Automatic Molding Machine operating; that plaintiff had been operating a Hunter machine for several years at Muskegon Aluminum and had taken schooling for it; that Noren offered $5.30 an hour to begin work; that Surge stated he wanted plaintiff to come to work for him and wanted to know what else he could do to get plaintiff to come to work. At this point the transcript of plaintiff's testimony shows:

"Q [counsel for plaintiff] Did you explain what else he could do to get you to come there?

"A Yes. I asked him what kind of a guarantee could he give me that I would work for—that I wouldn't be laid off in a week or two weeks or a year or what have you. And he said that he couldn't give me a written agreement because there was a union there and I had to join the union in 45 days. But he said in 45 days I would have to join the union.

\* \* \*

"Q When you were talking about job security, what was said?

"A He said that he couldn't give me a written thing— a guarantee—that I would work there, but that I would

work for 45 days and I would join the union. Then I would be covered under the union contract and—

"Q Did Mr. Surge ever tell you that the 45 days was a probation period?

"A No. In fact, he told me that it wasn't. He said—He told me: 'You don't have to worry about that. You are the man we want. You got the qualifications, and you sure don't have to worry about—'You know, that they wanted me to come there. There is no way I would have went there for one minute if I didn't figure that, you know, that I would belong to the union.

\* \* \*

"Q During the conversation with Mr. Surge, was the possibility of layoff discussed?

"A Yes, it was.

"Q Would you relate to the Court—

"A I asked him about getting laid off. He said there was no one in the plant that could bump me because there was nobody qualified for that job. They already posted it and they couldn't get no one to fill it. And he said—[h]e went on to say that the only way that I would get laid off is if the company closed down.

"Q Were you given, at any time prior to your termination, a copy of the union contract?

"A No.

"Q Were you ever told that you had to undergo a 45-day probation period?

"A No, sir. It was the opposite. He told me that—led me to believe just exactly the opposite—that I would not be on probation, that they knew what I could so. They wanted me there. It was just a matter of—I had to be there 45 days before I could join the union."

Plaintiff's testimony was not rebutted since defendant's motion came at the conclusion of plaintiff's proofs. Neither was plaintiff's testimony damaged or otherwise qualified by cross-examination.[2] Therefore, it must be taken at face value. As such,

---

[2] Counsel for defendant elected not to cross-examine plaintiff but to call plaintiff for cross-examination as part of defendant's case.

we are persuaded that the agreement was not the typical "you come to work for us and you may have a job forever or until retirement as long as your work is satisfactory" employment agreement. That is the type agreement found in *Toussaint, supra, McLaughlin, supra, Percival, supra* and *Milligan, supra.* In the case before us we find an agreement that plaintiff would work a specific period of 45 days, after which he would be a union member and would continue working subject to the protections given in the normal union contract. The protection of a union contract is an added ingredient which is not present in *Toussaint, Milligan* or the other cases supportive of the general rule. Further, plaintiff's unrefuted and unshaken testimony that even with the higher salary he would not have switched jobs without coming under the protective umbrella of union membership is a meaningful and significant factor. In an article entitled *Employment at Will vs. Individual Freedom: On Limiting The Abusive Exercise of Employer Power,* 67 Columbia L Rev 1404, 1405, 1410 (1967), Professor Blades levels a sharp criticism of the contract at will doctrine, saying:

"Despite this irreversible trend, the law has adhered to the age-old rule that all employers 'may dismiss their employees at will * * * for good cause, for no cause, *or even for cause morally wrong* [emphasis by Prof. Blades] without being thereby guilty of legal wrong.' This traditional rule, *which forces the nonunion employee* to rely on the whim of his employer for preservation of his livelihood, is what most tends to make him a docile follower of his employer's every wish. [Emphasis supplied.]

* * *

"The labor union, of course, has been a significant

source of protection for the employee from all sorts of arbitrary action by the employer. Among the many managerial rights which have been limited by collective bargaining agreements is the right of discharge. Through the 'just cause' provisions typically found in collective agreements unions not only protect their constituents from discharges for ulterior purposes, but also prohibit discharges for no reason or for reasons erroneously believed by the employer to be justified." (Footnotes omitted.)

Under the collective bargaining agreement, plaintiff could have only been discharged "for good cause". When plaintiff was summarily fired on the 43rd day of work he was denied the protection without which he would not have taken the position in the first place. Further, he was denied the protection referred to at footnote 2 in *Percival, supra.*

Finally, we note that the instant case also differs from *Toussaint* and the earlier Michigan cases cited in that plaintiff was giving up a virtually assured position and pension for the rest of his life. In this respect the instant case is similar to *Collins v Parsons College, supra,* where the court refused to follow the fire-at-will doctrine when a tenured or secured position was being given up. While Michigan has not yet adopted the rule relied on there and as stated in 60 ALR3d 267, *supra,* neither has Michigan rejected the doctrine.

Our decision to reverse the grant of summary judgment in favor of defendant and remand to the trial court in no way suggests that defendant was without just cause to discharge plaintiff.[3] On that issue we take no position but leave defendant to

---

[3] At oral argument defendant said that the firing was for just cause and that if summary judgment were set aside defendant's proofs would establish that just cause existed.

put in its proofs. Likewise we take no position on the quantum of proof of damages.

Reversed, costs to plaintiff.

R. B. Burns, P.J., concurred.

MacKenzie, J. *(dissenting).* I dissent. Although I agree with the majority's disposition of the statute of frauds issue, I disagree with its treatment of the issue concerning the terminability of the employment contract.

As the majority notes, the general rule, adhered to in Michigan, is that a contract for employment for an indefinite term may be terminated by either party at any time for any reason, absent some special consideration passing from the employee to the employer. *Toussaint v Blue Cross & Blue Shield of Michigan,* 79 Mich App 429; 262 NW2d 848 (1977), *lv gtd on separate grounds,* 402 Mich 950h (1978), *McMath v Ford Motor Co,* 77 Mich App 721, 724; 259 NW2d 140 (1977). An employee serving under such contract has no cause of action for damages for wrongful discharge. *Milligan v The Union Corp,* 87 Mich App 179, 182; 274 NW2d 10 (1978). I disagree with the majority that there is sufficient reason to deviate from the general rule in the instant case.

It is true that the protection of a collective bargaining agreement was an enticing feature of employment with the defendant. It is additionally true, however, that the protective features of the agreement were unavailable to the plaintiff until he became a union member, and that such membership was to be delayed until he had been employed by the defendant for a period of 45 days.

One of the protective clauses of the union contract was that an employee could only be discharged "for good cause". To provide such protec-

tion to the plaintiff prior to the termination of the 45-day period is to afford the plaintiff one of the protective devices of the contract prior to his having qualified for it. The agreement, however, specifically directs that the employer need not comply with the provisions during the 45-day period, over the course of which an employee is considered probationary.

The majority has apparently adopted the exception to the "fire-at-will" rule which considers the rule inapplicable when a tenured or secured position is being given up. Absent specific Supreme Court directive, I decline to adhere to this position. The approach is clearly contrary to prior case law in this state. According to the Supreme Court in *Adolph v Cookware Co of America,* 283 Mich 561, 568; 278 NW 687 (1938):

> "Plaintiff's proofs, taken as true, showed a contract for permanent employment. Such a contract is for an indefinite period and, unless for a consideration other than promise of services, the employment was terminable at the will of either party. *Lynas v. Maxwell Farms,* 279 Mich. 684, and cases there cited.
>
> "The action of plaintiff in giving up the practice of his profession was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment."

See also *Lynas v Maxwell Farms,* 279 Mich 684; 273 NW 315 (1937), *Milligan v The Union Corp, supra.* A mere detriment to the employee is, by itself, insufficient to serve as consideration; the employer must receive some form of benefit. The relinquishment of his previous position and its incident benefits by the plaintiff was not a bargained-for benefit received by the defendant.

I would affirm.