**John SITEK, Plaintiff,**

**v.**

**FOREST CITY ENTERPRISES, INC., a foreign corporation, Defendant.**

**Civ. No. 83–CV–2519.**

United States District Court,
E.D. Michigan, S.D.

May 30, 1984.

---

Richard Ashare of Logan & Ashare, P.C.,
Detroit, Mich., for plaintiff.

John A. Entenman of Dykem, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

AMENDED MEMORANDUM AND OR-
DER GRANTING SUMMARY JUDG-
MENT IN FAVOR OF DEFENDANT

COHN, District Judge.

I.

This is a wrongful discharge from employment case. Defendant has moved for summary judgment. From the documents and plaintiff's deposition the undisputed material facts are as follows:

Plaintiff was the Chief of Police of the City of Hamtramck, Michigan. In the fall of 1980 he was contacted by Vince Hill of defendant Forest City Enterprises, Inc. (Forest City) to see if he was interested in setting up an armed security guard system for a luxury high-rise apartment complex, to be known as Trolley Plaza, which Forest City was building in the City of Detroit. Plaintiff expressed interest in the job and on March 4, 1981, was hired as Director of Security at Trolley Plaza. This was only a part-time position; plaintiff continued in his job with Hamtramck. As Director of Security plaintiff was in charge of hiring and supervising the security guards for Trolley Plaza. While he was working part-time Hill told plaintiff about another complex Forest City was opening in Detroit and said Forest City wanted him to be in charge of security of that complex as well. Hill told plaintiff they really wanted him for the company and "didn't want to lose" him. (Sitek Dep., p. 72–73). In January 1982 plaintiff quit his position with Hamtramck and began working full time for Forest City.

In early 1982 the security guards supervised by plaintiff became dissatisfied primarily because they had been promised a pay raise which was not forthcoming. In response Forest City claimed there had been a misunderstanding. The guards sent a letter to Forest City with a list of grievances, threatening to form a union if they did not receive satisfaction. Hill called

plaintiff and told him it would be in his best interests to discourage any efforts by the guards to unionize, and that under no circumstances would Forest City tolerate a union. Plaintiff told Hill there was no way he would take any part in union busting activities. Forest City management personnel continued to tell plaintiff he should do something about the efforts of the guards to unionize but plaintiff continued to refuse to discourage a union.

Forest City then began cutting back plaintiff's hours. Finally on July 30, 1982, Forest City informed plaintiff since Trolley Plaza was not making money the security force was being dissolved and a private guard service was taking over the guard operation. Accordingly, plaintiff was discharged.

## II.

### A.

On June 7, 1983, plaintiff filed suit making the following claims:

1. Forest City breached an express contract of employment by discharging plaintiff because of his failure to engage in union-busting activities.
2. Forest City breached an implied promise and contract of employment in discharging plaintiff because he wouldn't bust the union.
3. Forest City breached an implied covenant of good faith and fair dealing.
4. Forest City's actions were contrary to Michigan's fair employment statutes.
5. Forest City intentionally inflicted emotional distress on plaintiff.
6. Forest City's actions constituted a retaliatory discharge in violation of the public policy of Michigan since it unlawfully interfered with employees' attempts to unionize.

Forest City seeks summary judgment on all plaintiff's claims arguing they are preempted by Section 8(a)(1) and (3) of the National Labor Relations Act (NRLA), 29 U.S.C. § 158(a)(1) and (3), and that, in any event, none of plaintiff's specific claims are valid under Michigan law.

### B.

■ The heart of Forest City's argument is that plaintiff's claims are preempted by the NLRA. The issue of preemption in the context of labor cases has been frequently litigated and basic guidelines have been developed by the United States Supreme Court to determine if a state cause of action is preempted or not by the NLRA. First, it must be determined whether the conduct the state seeks to make the basis of liability is "actually or arguably protected or prohibited by the NLRA." *Local 926, International Union of Operative Engineers v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983).

> "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

*San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).

> "When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling or responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act, we refuse to invalidate state ... sanction of the conduct."

*Jones, supra,* 103 S.Ct. at 1459.

■ An important factor in making this determination is whether the claim based on state law is identical to the claim which could be presented to the NLRB. *Belknap, Inc., v. Hale,* — U.S. —, —, 103 S.Ct. 3172, 3183, 77 L.Ed.2d 798 (1983); *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). For example, the Supreme Court has held a state law action for wrongful discharge is not preempted where the issues litigated in the state action would not have "anything in common" with the issues

before the NLRB on an unfair labor practice charge. *Belknap, supra.* The Supreme Court has also held that state law actions for defamation, intentional infliction of emotional distress, and trespass are not preempted since these claims concern conduct which is only of peripheral concern to the NLRA. See *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Sears, Roebuck, supra.*

### III.

#### A.

■ As a general rule supervisors are not covered by the NLRA and therefore the discharge of a supervisor will rarely be a matter for the NLRB. However, in certain circumstances the discharge of a supervisor may violate Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), which states: "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."[1] For example, an employer cannot fire a supervisor for giving adverse testimony at an NLRB proceeding. Also,

> "[A]n employer may not discharge a supervisor for refusing to commit unfair labor practices, or because the supervisor fails to prevent unionization."

*Parker-Robb Chevrolet,* 110 LLRM 1289, 1290 (1982).

■ The acts which plaintiff alleges he was fired for, that is, refusing to engage in union busting, are subject to the prohibition of 29 U.S.C. § 158(a)(1). See *Belcher Towing Company v. NLRB,* 614 F.2d 88 (5th Cir.1980); *NLRB v. Talladega Cotton Factory,* 213 F.2d 209, 216–217 (5th Cir. 1954); *Parker-Robb, supra.* Therefore, plaintiff's state law claims would ordinarily be preempted. The question is whether the conduct at issue is only of peripheral concern to the NLRA or whether there is a deeply rooted local interest at stake. This requires an assessment of the merits of plaintiff's claims since some of them on their face have little to do with the NLRA. The court concludes that plaintiff's only viable claim in this case is that his discharge contravenes the public policy of Michigan because it interfered with the guards efforts to unionize. Since this is the very issue which would be before the NLRB on an unfair labor practice charge, plaintiff's claim is preempted.

#### B.

■ Most of plaintiff's claims are not valid under Michigan law. There was no express contract providing plaintiff would not be discharged except for cause. Plaintiff alleges there was such an express contract here but no such contract has been produced. To the contrary is Forest City's Employee Handbook which provides: "The employment relationship between employee and employer is at will and may be terminated by either party at any time."

■ Nor can plaintiff maintain a claim under an implied contract. Such a claim is difficult to maintain when the employee handbook expressly provides the employment relationship is at will. See *Toussaint v. Blue Cross,* 408 Mich. 579, 610–612, 292 N.W.2d 880 (1980); *Summers v. Sears, Roebuck & Co.,* 549 F.Supp. 1157 (E.D. Mich.1982); *Novosel v. Sears, Roebuck and Company,* 495 F.Supp. 344 (E.D.Mich. 1980). The only basis plaintiff is able to articulate in defense of his implied contract claim is that he was assured his position was cemented and that in no way did the company want to lose him. (Sitek dep. p. 72–73, 75–76). There was no written statement that plaintiff would only be discharged for cause, nor was he given any oral promise to that effect. The employee handbook plainly stated that employment was at will and the employment relationship could be terminated by either party at any time. Under these facts plaintiff does not have a *Toussaint* claim for a breach of an implied employment contract.

---

**1.** § 157 covers the right of employees to unionize.

Plaintiff's further claim that he had an implied contract for employment under the rationale of *Rowe v. Noren Pattern & Foundry, Co.,* 91 Mich.App. 254, 283 N.W.2d 713 (1979), is to no avail since the facts in this case differ materially from the facts in *Rowe.* Rowe gave up a job where he had only one and a half years to go to obtain a vested pension to go work for defendant. Given his situation Rowe specifically asked about job security when defendant offered him a higher paying job than the one he had. The defendant told Rowe he would have the security of a union contract and that there was only a 45 day probationary period before he would be a member of the union. Defendant then told Rowe he did not have to worry about the probationary period, assuring him that under no circumstances would he be laid off during the initial 45 days. Despite this promise Rowe was laid off during the probationary period and he then sued defendant. After plaintiff's proofs at trial the trial judge dismissed Rowe's case finding he only had an at will employment contract. The Michigan Court of Appeals reversed, holding that under the circumstances plaintiff had established a *prima facie* case for an implied contract, considering the substantial benefit he gave up in reliance on the specific promises made to him by defendant.

The facts in this case, construed in plaintiff's favor, fail to state a claim under *Rowe.* In contrast to Rowe, plaintiff here already had a vested pension as Chief of Police. When he retired in January 1982 to work full time for Forest City plaintiff began receiving $1,100 each month in pension benefits from the City of Hamtramck. (Sitek Dep. p. 51.) There is no evidence plaintiff gave up any benefit that would have vested had he remained in his previous job. His retirement from his job as police chief was "but an incident necessary on his part to place himself in a position to accept" the job offer from Forest City. *Adolph v. Cookware Company of America,* 283 Mich. 561, 568, 278 N.W. 687 (1938). Furthermore, in contrast to *Rowe,* there is no evidence plaintiff specifically asked Forest City about job security, nor did Forest City make any specific promises that plaintiff would not be laid off during a definite period. The mere statement that Forest City did not want to lose plaintiff does not amount to a promise of permanent employment, especially when the Employee Handbook specifically stated plaintiff's employment was at will.

Nor is there a valid claim for intentional infliction of emotional distress. Plaintiff has not shown any "extreme and outrageous" conduct on Forest City's part, nor is there any evidence he experienced severe emotional distress. See *Warren v. June's Mobile Home Village and Sales, Inc.,* 66 Mich.App. 386, 239 N.W.2d 380 (1976).

This leaves plaintiff's claim that Forest City's actions in discharging him were in contravention of the public policy of Michigan contained in M.S.A. § 17.454(17) [M.C.L.A. § 423.16] which makes it unlawful for employers to interfere with or coerce employees in the exercise of their rights relative to unionization. Proving this claim does not hinge on any contractual or tort theory; plaintiff's proofs would have showed that defendant discharged him because he refused to engage in union busting. That is the exact case which would be presented to the NLRB on a charge of unfair labor practices. Since plaintiff's claim lies at the heart of the prohibitions of the NLRA it is preempted and this court is without jurisdiction. *Jones, supra.*

### IV.

Forest City is entitled to summary judgment because:

A. Plaintiff had no express contractual right to be discharged only for cause.

B. Construing the facts in plaintiff's favor, there is no valid claim under an implied contract theory.

C. Construing the facts in plaintiff's favor, there is no valid claim for intentional infliction of emotional distress.

D. Plaintiff's claim that defendant's actions were in contravention of the public

**1386**

policy of Michigan is preempted by the NLRA.

The motion for summary judgment is GRANTED and this case is DISMISSED.

SO ORDERED.