## CALABRESE v TENDERCARE OF MICHIGAN, INC

Docket No. 243697. Submitted April 6, 2004, at Detroit. Decided June 3, 2004, at 9:05 A.M.

Kimberly Calabrese brought an action in the Wayne Circuit Court against Tendercare of Michigan, Inc., and Craig Schuler, alleging, in part, wrongful discharge from employment and tortious interference with business relations. The plaintiff alleged that her employment as a supervisor had been terminated when she refused to fire other employees for legal unionizing activities. The defendants moved for summary disposition, alleging that the court lacked subject-matter jurisdiction because the claims were preempted by the National Labor Relations Act (NLRA), 29 USC 151 *et seq.* The court, Warfield Moore, Jr., J., denied the defendants' motion. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. The trial court erred in denying the defendants' motion for summary disposition. The claims alleging wrongful discharge and tortious interference were preempted by the NLRA. State causes of action are preempted by the NLRA when they concern an activity that is actually or arguably protected or prohibited by the act. The plaintiff's claims should have been brought before the National Labor Relations Board because the plaintiff alleged unfair labor practices under 29 USC 158.

2. This case falls within the jurisdiction of the National Labor Relations Board.

3. The discharge of a supervisor is unlawful under the NLRA when it interferes with the right of employees to exercise their rights under § 7 of the act.

4. The trial court erred in relying on *Garavaglia v Centra, Inc*, 211 Mich App 625 (1995), in ruling that the plaintiff's public policy claim was not preempted by the NLRA. That decision applies only in those cases in which preemption is not raised or addressed.

Reversed.

1. LABOR RELATIONS — NATIONAL LABOR RELATIONS ACT — PREEMPTION.

State regulations and causes of action are preempted by the National Labor Relations Act when they concern an activity that is actually

or arguably protected or prohibited by the act; a state claim may survive if the conduct at issue is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility (29 USC 151 *et seq.*).

2. LABOR RELATIONS — NATIONAL LABOR RELATIONS ACT — NATIONAL LABOR RELATIONS BOARD.

The National Labor Relations Act authorizes the National Labor Relations Board to prevent any person from engaging in any unfair labor practices listed in section 158 of the act affecting commerce; the board has the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause and has the discretion to exercise its jurisdictional authority (29 USC 160[a], 29 USC 164[c]).

3. LABOR RELATIONS — NATIONAL LABOR RELATIONS ACT — SUPERVISORS — DISCHARGE OF SUPERVISORS.

The discharge of a supervisor is unlawful under the National Labor Relations Act when the discharge interferes with the right of employees to exercise their rights under § 7 of the act, such as when the supervisor is discharged for refusing to commit unfair labor practices (29 USC 151 *et seq.*).

*Scott E. Combs* and *Katrina A. Murrel* for the plaintiff.

*Keller Thoma, A Professional Corporation* (by *Terrence J. Miglio* and *Mark C. Knoth*), for the defendants.

Before: WILDER, P.J. and HOEKSTRA and KELLY, JJ.

PER CURIAM. Plaintiff alleged that defendants wrongfully terminated her employment because she refused to fire employees for engaging in unionizing activities. Defendants appeal by leave granted the trial court's partial denial of their motion for summary disposition, arguing that the National Labor Relations Act (NLRA)[1] preempts plaintiff's claims and, therefore, the trial court lacks subject-matter jurisdiction. We reverse.

---

[1] 29 USC 151 *et seq.*

1. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff was hired as an administrator at Wayne Total Living Center (WTLC), a nursing home facility operated by defendant Tendercare of Michigan, Inc. Defendant Craig Schuler was plaintiff's supervisor. Approximately four months into plaintiff's employment, Schuler met with plaintiff, showed her a list of nineteen employees, and advised her to fire them. According to plaintiff:

> [Schuler] wanted to meet to discuss this list that he had of the nineteen employees that were involved in the union activity and because the next day they were doing [informational] picketing in front of the buildings, he wanted these people terminated. He said it had to come in sections to take out so many per each segment basically, because you didn't want to do them all at one time. The first person that had to go was Ethel Kitchen.

Plaintiff immediately protested, stating that to terminate the employment of these employees for their participation in union organization efforts was unethical and illegal. Schuler responded that "it needed to be done."

One month later, because plaintiff had not fired anyone on the list, Schuler met with plaintiff and again stated that he wanted Kitchen fired. Plaintiff in turn reiterated that this could not be done. After a heated discussion, in which Schuler stated that plaintiff was no longer needed if she could not fire Kitchen, plaintiff pushed her keys across the desk, gathered her belongings, and left WTLC. Afterward, she sent a certified letter to Schuler, which read: "[Y]ou stated 'you did not need me anymore.' I am under the impression that you fired me with no documentation for reasons of performance." Plaintiff received no response.

Plaintiff subsequently filed a complaint against de-

fendants alleging wrongful discharge, tortious interference with business relations, and intentional infliction of emotional distress. She specifically alleged that defendants terminated her employment because she refused to fire employees for legal unionizing activities. Defendants succeeded in having the case removed to the federal district court on the basis that the claims were predicated on federal law. Plaintiff then brought a motion in the federal district court seeking to have her claims remanded to state court on the basis that the claims arose solely under state law. The federal district court remanded the case to the Wayne Circuit Court on the basis of plaintiff's representation that the claims were based on Michigan law only and the court's own determination that plaintiff claimed "that her termination was in violation of Michigan public policy." After the remand, defendants moved for dismissal on the basis that the trial court lacked subject-matter jurisdiction because the NLRA preempted plaintiff's claims that defendants engaged in unfair labor practices. With regard to plaintiff's claims of wrongful discharge and tortious interference,[2] the trial court denied defendants' motion, ruling that the claims were not preempted by the NLRA. Defendants appealed this ruling by leave granted.

## II. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Travelers Ins Co v Detroit Edison Co,* 465 Mich 185, 205; 631 NW2d 733 (2001).

---

[2] The trial court dismissed plaintiff's claim alleging intentional infliction of emotional distress on other grounds; this decision is not challenged on appeal.

III. ANALYSIS

A. PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE NLRA

The trial court erred in denying defendants' motion for summary disposition under MCR 2.116(C)(4) because plaintiff's claims of wrongful discharge and tortious interference are preempted by the NLRA under the preemption doctrine set forth in *San Diego Building Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959). Justice LEVIN explained the *Garmon* doctrine in his opinion in *Bullock v Automobile Club of Michigan,* 432 Mich 472, 492-493; 444 NW2d 114 (1989), stating:

> The United States Supreme Court has developed two doctrines for determining whether a state claim is preempted by the NLRA. One doctrine, set forth in *San Diego Building Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959), established that state regulations and causes of action are preempted when they concern an activity that is actually or arguably protected or prohibited by the NLRA.[3] The state claim may survive, however, if the conduct at issue "is of only peripheral concern to the federal law or touches interests so deeply rooted in local feeling and responsibility . . . ." The court balances the state's interest in regulating or promoting a remedy for the conduct against the intrusion in the NLRB's [National Labor Relations Board's] jurisdiction and the risk that the state's determination will be inconsistent with provisions of the NLRA.

After deciding *Garmon,* the United States Supreme Court further articulated the preemption doctrine:

---

[3] The other doctrine, known as the *Machinists* doctrine because it originated in *Machinists v Wisconsin Employment Relations Comm,* 427 US 132; 96 S Ct 2548; 49 L Ed 2d 396 (1976), is inapplicable here because it deals with activity that is not arguably protected or prohibited under the NLRA. *Bullock, supra* at 493.

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

\* \* \*

The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. [*Sears, Roebuck & Co v San Diego Co Dist Council of Carpenters,* 436 US 180, 197, 202; 98 S Ct 1745; 56 L Ed 2d 209 (1978).]

More recently, this Court held:

"Subject to limited exceptions, when an activity is 'arguably' subject to the provisions of the NLRA, states must defer to the exclusive competence of the National Labor Relations Board. [*Int'l Longshoremen's Ass'n v Davis,* 476 US 380, 381, 394; 106 S Ct 1904; 90 L Ed 2d 389 (1986)]; *San Diego Building Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959). When a party asserts that state proceedings are preempted because the conduct at issue is within the purview of the NLRA, the claim represents a challenge to the subject-matter jurisdiction of the state court or tribunal; it is 'a claim that the state court has no power to adjudicate the subject matter of the case.' *Davis* at 393." [*American Federation of State, Co & Muni Employees v Dep't of Mental Health,* 215 Mich App 1, 5; 545 NW2d 363 (1996), quoting *Michigan Council 25, AFSCME v Louisiana Homes, Inc (On Remand),* 203 Mich App 213, 216-217; 511 NW2d 696 (1994).]

Here, plaintiff alleged that defendants terminated her employment because she refused to fire employees

for engaging in unionizing activities. The pertinent portions of the NLRA, 29 USC 158, provide:

> It shall be an unfair labor practice for an employer—
>
> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.
>
> * * *
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

29 USC 157 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

In a case very similar to this one, *Sitek v Forest City Enterprises, Inc,* 587 F Supp 1381 (ED Mich, 1984), the plaintiff alleged that the defendant wrongfully discharged him from his supervisory position because he refused to discourage unionizing activities. The court determined that because the plaintiff claimed that the "defendant discharged him because he refused to engage in union busting," the NLRB had jurisdiction over the claim pursuant to 29 USC 158. *Id.* at 1385. Similarly, plaintiff here claimed that defendants fired her for refusing to discourage unionizing activities. Because this is an unfair labor practice under 29 USC 158,

plaintiff's claims could have been brought before the NLRB. According to the *Garmon* doctrine, the NLRA preempts these claims.

### B. THE NLRB HAS JURISDICTION

Nevertheless, plaintiff contends that the NLRB's jurisdictional requirements are not met. We disagree. The NLRA authorizes the NLRB to prevent "any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce." 29 USC 160(a). "Commerce" includes interstate and foreign commerce. 29 USC 152(6). As defined by 29 USC 152(7),

[t]he term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

"Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." *Nat'l Labor Relations Bd v Reliance Fuel Oil Corp,* 371 US 224, 226; 83 S Ct 312; 9 L Ed 2d 279 (1963). While the NLRB has the broadest jurisdiction permitted under the Commerce Clause, it has adopted jurisdictional standards or guidelines expressed as a dollar amount of business volume to facilitate the efficient use of its resources in monitoring interstate commerce. *Nat'l Labor Relations Bd v Pease Oil Co,* 279 F2d 135, 137 (CA 2, 1960). But these self-imposed standards do not limit the jurisdiction conferred by Congress. *Nat'l Labor Relations Bd v W B Jones Lumber Co,* 245 F2d 388, 391 (CA 9, 1957).

As demonstrated in *Nat'l Labor Relations Bd v Evangelical Lutheran Good Samaritan Society,* 477 F2d 297, 299 (CA 9, 1973),

the Board . . . extend[ed] jurisdiction to proprietary hospitals with gross revenues of $250,000 per year. *Butte Medical Properties, etc.*, 168 NLRB 266 (1967); and on the same date, exercised jurisdiction over the nursing home industry, if such homes were operated for a profit, and had a gross income of $100,000 per year. *University Nursing Home, Inc.*, 168 NLRB 263 (1967).

Finally, the Board extended its jurisdiction to non-profit nursing homes. *Drexel Home, Inc.*, 182 NLRB 1045 (1970).

Accordingly, this case falls within the jurisdiction of the NLRB. Although defendants concede that the WTLC is not directly engaged in interstate commerce, plaintiff's complaint clearly alleges that defendants engaged in unfair labor practices, which indirectly affect interstate commerce. Also, while defendants' assertions about the WTLC's annual gross revenues and Tendercare's breadth of business are not substantiated by the record, this factual matter is not essential to our resolution of this jurisdictional issue. It is well-settled that the NLRB has the discretion to exercise its jurisdictional authority. See 29 USC 164(c). As defendants correctly state, the issue whether the NLRB has jurisdiction is distinct from the issue whether the NLRB will assert its jurisdiction. Thus, it is not necessary to resolve the factual issue regarding whether defendants satisfy the NLRB's discretionary standard for exercising jurisdiction. Because plaintiff's allegations of defendants' unfair labor practice actually or arguably fall within the NLRB's jurisdiction, we conclude that plaintiff's claims are preempted under *Garmon*.[4]

C. DISCHARGE OF A SUPERVISOR MAY VIOLATE THE NLRA

Plaintiff also incorrectly contends that the NLRA is not applicable to this case because it does not apply to

[4] We note that according to defendants, the NLRB has already asserted its jurisdiction over alleged unfair labor practices at the facility.

supervisors' actions. Although 29 USC 158 is not expressly applicable to supervisors, in *Pontiac Osteopathic Hosp,* 284 NLRB 442 (1987), the NLRB held:

> It is clear that protection under the Act is afforded to employees, not supervisors. Consequently, the discharge of a supervisor violates the Act only where it interferes with the exercise of employees' Section 7 rights.

Stated differently in *Parker-Robb Chevrolet, Inc,* 262 NLRB 402, 404 (1982), the NLRB said:

> In final analysis, the instant case, and indeed all supervisory discharge cases, may be resolved by this analysis: The discharge of supervisors is unlawful when it interferes with the right of employees to exercise their rights under Section 7 of the Act, as when they give testimony adverse to their employers' interest or when they refuse to commit unfair labor practices.

Plaintiff's claims come within the scope of the NLRA because she alleged that her employment was terminated for refusing to interfere with employees' rights under 29 USC 157. See also *Sitek, supra.*

### D. *GARAVAGLIA* IS NOT CONTROLLING

We agree with defendants that the trial court erred when it relied on *Garavaglia v Centra, Inc,* 211 Mich App 625, 629, 633; 536 NW2d 805 (1995), in ruling that plaintiff's public policy claim was not preempted by the NLRA.

In *Garavaglia,* the plaintiff alleged that his employer breached public policy by acts that violated the NLRA. *Id.* at 629. The defendants argued that the trial court erred in denying their motion for a directed verdict because Michigan does not recognize an implied cause of action for breach of public policy based on an employer's violation of federal law. *Id.* This Court determined that

the plaintiff's claim "regarding a breach of public policy may be premised on the alleged violation of a federal statute." *Id.* at 631.

We read *Garavaglia* as limited to its facts, which are distinct from the facts in this case. In *Garavaglia,* the defendants asserted that there was no state cause of action based on the NLRA. They did not argue, as defendants do here, that the plaintiff's claim was preempted by the NLRA. In *Garavaglia,* had the defendants raised or the courts addressed the preemption issue, it is clear the NLRA would have been found to preempt the plaintiff's claim. Therefore, the *Garavaglia* decision applies to only those cases in which preemption is not raised or addressed.

In conclusion, the trial court erred in denying defendants' motion for summary disposition under MCR 2.116(C)(4), because plaintiff's claims are preempted by the NLRA under *Garmon* and are within the jurisdiction of the NLRB. Because our resolution of this issue disposes of the appeal, we need not address the other issues raised.

Reversed.