RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TIMOTHY LEWIS,

                    *Plaintiff-Appellant,*

       *v.*

WHIRLPOOL CORPORATION,

                     *Defendant-Appellee.*

No. 09-4231

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 09-01203—James G. Carr, District Judge.

Argued: December 7, 2010

Decided and Filed: January 12, 2011

Before: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jami S. Oliver, OLIVER LAW OFFICE, Columbus, Ohio, for Appellant. Dana Connell, LITTLER MENDELSON, P.C., Chicago, Ilinois, for Appellee. **ON BRIEF:** Jami S. Oliver, OLIVER LAW OFFICE, Columbus, Ohio, for Appellant. Dana Connell, Houston A. Stokes, LITTLER MENDELSON, P.C., Chicago, Ilinois, for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Plaintiff-appellant Timothy Lewis brought a wrongful-termination claim against defendant-appellee Whirlpool Corporation alleging that he was terminated in violation of Ohio public policy for his refusal to discharge employees for

---

    [*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

unionizing activities. The district court dismissed Lewis's complaint for lack of subject-matter jurisdiction, finding his claim preempted by the National Labor Relations Act, 29 U.S.C. § 158, which is to be interpreted and applied in the first instance by the National Labor Relations Board. We agree with the district court's analysis and accordingly affirm.

I.

Lewis was employed by Whirlpool from August 17, 1977, through April 2, 2007, at its Marion, Ohio facility. In June 1997, Lewis was promoted to the position of Manufacturing Supervisor in the "Drum and Powder Process Area."

In 2004, several Whirlpool employees began wearing pro-union shirts and meeting with union representatives. At this time, Whirlpool's Marion facility was non-unionized. As a result of this unionizing activity, Lewis alleges that Whirlpool Division Vice President Stan Kinnett asked him to "build a case" and terminate two of the instigating employees. According to Lewis, he was informed that Whirlpool would retaliate against him if he did not follow Kinnett's directive. Nevertheless, Lewis refused to terminate the employees.

In July 2005, Lewis was transferred to "Assembly," an area of the Marion facility viewed as "the least desirable part of the plant in which to work." While working in Assembly between July 2005 and February 2006, Lewis asserts that his direct supervisor "only spoke to [him] on one . . . occasion[,] despite the fact that other direct supervisors . . . would communicate with their subordinates on a daily basis." In February 2006, Lewis began to report to a new manager, who, according to Lewis, "constantly harassed" him over "minutiae."

On March 29, 2007, Lewis was accused of "paying an employee for an entire shift despite the employee not being on the premises." Lewis was also accused of "badging an employee," which refers to when a supervisor clocks in one employee using the time badge of a different employee. Lewis denied these allegations, but nevertheless was suspended pending further investigation.

On April 2, 2007, Lewis was terminated for "badging an employee." Lewis asserts that Whirlpool terminated him, despite its knowledge that it was another employee, Dusty Miller, who had "badged" the employee at issue.

Following his termination, Lewis filed a charge with the NLRB, asserting that he was terminated for his failure "to commit unfair labor practices on behalf of [Whirlpool] during a previous organization campaign among its production employees." In November 2007, Lewis received a letter from a field examiner for the NLRB. This letter informed him that the NLRB Regional Director had "considered the complete investigative case file developed in connection with [Lewis's] pending unfair labor practice charge" and determined "that no violation of the National Labor Relations Act" had been demonstrated. Specifically, the letter provided that the charge against Whirlpool was "without merit since no clear evidence established that it terminated [Lewis's] employment . . . because [he] refused to commit unfair labor practices on its behalf during a previous union organizing campaign some three years" prior to his termination. The letter further informed Lewis that the Regional Director was prepared to dismiss his charge for lack of merit unless it was immediately withdrawn. Lewis thereafter withdrew his charge.

On March 31, 2009, Lewis filed a complaint in the Court of Common Pleas in Marion County, Ohio. Whirlpool subsequently removed the action to the United States District Court for the Northern District of Ohio based upon diversity jurisdiction. Lewis's complaint asserted a single claim of wrongful termination. Specially, Lewis alleged that Whirlpool "violated Title 29 U.S.C. § 158(a)(3) of the National Labor Relations Act . . . by discharging [him] for refusing to terminate subordinate union organizers," and that as a result, the termination violated Ohio public policy.

On June 2, 2009, Whirlpool moved to dismiss Lewis's complaint for lack of subject-matter jurisdiction, asserting that his claim is preempted by the NLRA. The district court agreed, granting the motion on September 2, 2009. This timely appeal followed.

II.

A district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction is reviewed de novo. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 324 (6th Cir. 2007). In considering a Rule 12(b)(1) motion, a court may look beyond the jurisdictional allegations in the complaint and consider submitted evidence. *Id.* at 330. When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Here, relying upon *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), the district court ruled that it did not possess subject-matter jurisdiction over this action because Lewis's wrongful-termination claim was preempted by the NLRA. We agree.

In *Garmon*, the Supreme Court held that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that . . . jurisdiction must yield [to the NLRB]." *Id.* at 244. The foundation of this rule is "the expressed congressional desire for uniformity in the nation's labor policy." *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001). Therefore, "[w]hen an activity is *arguably subject* to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board[.]" *Garmon*, 359 U.S. at 245 (emphasis added).

Lewis asserts that his wrongful-termination claim is not "arguably subject" to the strictures of the NLRA because, as a former supervisor, he is not an "employee" covered by the Act. The parties neither dispute that Lewis was a "supervisor," as the term is

defined by the Act,[1] nor that the NLRA does not generally protect supervisors from unfair labor practices.[2] However, a supervisor *does* have a viable claim under the NLRA when terminated or otherwise disciplined for *refusing to commit* unfair labor practices.[3] *See USF Red Star, Inc. v. NLRB*, 230 F.3d 102, 106 (4th Cir. 2000) ("Although supervisors are not explicitly covered by the NLRA, § 158(a)(1) is violated if a supervisor's discharge results from his refusal to commit an unfair labor practice."); *Auto. Salesmen's Union Local 1095, United Food & Commercial Workers Union, AFL-CIO v. NLRB*, 711 F.2d 383, 386 (D.C. Cir. 1983) (noting that supervisors have a claim under the NLRA when disciplined for refusing to commit an unfair labor practice); *Belcher Towing Co. v. NLRB*, 614 F.2d 88, 91 (5th Cir. 1980) (same); *Gerry's Cash Markets, Inc. v. NLRB*, 602 F.2d 1021, 1023 (1st Cir. 1979) (same); *Russell Stover Candies, Inc. v. NLRB*, 551 F.2d 204, 206-07 (8th Cir. 1977) (same). This exception to the supervisor exclusion is intended to protect covered employees from unfair labor practices. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 384 n.4 (1986) ("Even though supervisors are not covered by the Act, a discharge may constitute a § 8(a)(1) unfair labor practice if it infringes on the § 7 rights of the employer's nonsupervisory employees."); *Russell*, 551 F.2d at 206 ("The supervisor is not protected in his own right[,] his basis for relief [under the NLRA] is that his discharge had a

---

[1] A "supervisor" is defined by the NLRA as follows:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

[2] Chapter 7 of the NLRA protects "employees" from "unfair labor practices." 29 U.S.C. § 158(a). Supervisors are expressly excluded from the definition of "employee." 29 U.S.C. § 152(3) ("The term 'employee' . . . shall not include . . . any individual employed as a supervisor.").

[3] It is undisputed that if Lewis had terminated Whirlpool employees for unionizing activities, such terminations would constitute unfair labor practices. 29 U.S.C. § 158(a)(3).

tendency to interfere with, restrain or coerce the protected employees in the exercise of their section 7 rights.").[4]

Lewis relies upon the November 2007 letter from the NLRB Field Examiner in asserting that his wrongful-termination claim is not covered by the NLRA. Specifically, he contends that the NLRB determined that it did not have subject-matter jurisdiction because Lewis was a supervisor, relying on a sentence in the letter that states: "It is undisputed that you served [Whirlpool] in the capacity of a 'supervisor' within the statutory meaning of Section 2(11) of the Act and, consequently, do not enjoy the protections guaranteed 'employees' under the Act."

Lewis mischaracterizes the substance of the letter. As noted by the district court, the letter clearly addresses the substance of Lewis's claim, finding it to be "without merit." Indeed, the very purpose of the letter was to inform Lewis that without the voluntary withdrawal of his charge, the NLRB would publish its finding of "no fault with respect to [Whirlpool's] actions under review." The jurisdiction of the NLRB is not questioned, but assumed in the November 2007 letter.[5]

Because Lewis's wrongful-termination claim is "arguably subject" to the NLRA, *Garmon* preemption is implicated. *Garmon*, 359 U.S. at 245. However, the Supreme Court instructs that the "inflexible application [of preemption] is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25*,

---

[4]At oral argument, Lewis relied upon *Fortier v. United Food and Commercial Workers Union Local 876*, Civ. No. 05-CV-60004, 2006 WL 2457463 (E.D. Mich. Aug. 23, 2006), and *Dominguez v. Excell Agent Services, LLC*, 137 F. Supp. 2d 1264 (D. N.M. 2001), in asserting that his wrongful-termination claim is not covered by the NLRA as a result of his supervisor status. However, these cases merely establish that supervisors are not protected as employees against unfair labor practices under the Act. *Fortier*, 2006 WL 2457463, at *3-4; *Dominguez*, 137 F. Supp. 2d at 1266-67. They do not address whether a supervisor has a claim when terminated for *the failure to commit* unfair labor practices.

[5]This is not the first instance in which a letter from the NLRB has been misconstrued in this manner. In *Local 926, International Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 680 (1983), the Supreme Court noted that "the Court of Appeals may have interpreted the Regional Director's letter as indicating that the Board lacked jurisdiction to adjudicate [the plaintiff's] complaint because of [the plaintiff's] supervisory status. That is plainly not the case, for the Regional Director's statement did not decline jurisdiction but addressed the merits of the complaint."

430 U.S. 290, 302 (1977).  Thus, when a claim is "arguably subject" to the NLRA, we consider two factors in determining whether *Garmon* preemption is required: "(1) whether there exists a 'significant' state interest in protecting its citizens from the conduct; and (2) whether state jurisdiction over the arguable labor violation would entail 'little risk' of interfering with the uniform national labor policy." *Walcher*, 270 F.3d at 1027 (citing *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180, 196 (1978)).

The second factor of this analysis "is equivalent to the question of whether the state cause of action is 'identical' to a claim that could have been made to the Board." *Id.*  If the claims are identical, "then the Board has exclusive jurisdiction because the state regulation impinges directly on the Board's prerogative to fashion a uniform labor policy." *Id.* at 1027-28.  Accordingly, when claims are identical, our analysis need go no further, as preemption is required.  *See Sears, Roebuck & Co.*, 436 U.S. at 202 ("[W]hen the same controversy may be presented to the state court or the NLRB, it *must* be presented to the Board.") (emphasis added).  Without a doubt, the claim Lewis could have brought (and did bring) before the NLRB and the claim he now asserts are identical.  The sole and dispositive inquiry for both claims is whether Lewis was terminated for the failure to commit unfair labor practices, as defined by the NLRA.  *See Local 926*, 460 U.S. at 682 (finding claims to be identical because the "same crucial element must be proved" for both).  Accordingly, Lewis's wrongful-termination claim is preempted.[6]

---

[6]Several courts have found preemption to be required under circumstances indistinguishable from those presented here.  Specifically, such courts have found state-law claims for wrongful termination to be preempted when a supervisor claimed he was discharged for refusing to commit unfair labor practices. *See Sitek v. Forest City Enters., Inc.*, 587 F. Supp. 1381, 1384 (E.D. Mich. 1984); *Calabrese v. Tendercare of Mich., Inc.*, 685 N.W.2d 313, 317-19 (Mich. Ct. App. 2004); *Hinton v. Sigma-Aldrich Corp.*, 93 S.W.3d 755, 758-60 (Mo. Ct. App. 2002); *Chavez v. Copper State Rubber of Ariz., Inc.*, 897 P.2d 725, 729-32 (Ariz. Ct. App. 1995); *Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal. App. 4th 521, 528 (Cal. Ct. App. 1993); *Venable v. GKN Auto.*, 421 S.E.2d 378, 379-81 (N.C. Ct. App. 1992).  Lewis cites no contrary authority.

III.

In the alternative, Lewis asserts that the district court erred in dismissing his complaint because in doing so, the court denied him procedural due process. This argument has no merit.

First, we need not address Lewis's due-process claim, as it was not raised before the district court. *See Hood v. Tenn. Student Assistance Corp.*, 319 F.3d 755, 760 (6th Cir. 2003) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (internal citation and quotation marks omitted). Second, Lewis's claim fails on its merits. We apply a two-part test in addressing procedural due-process claims. "[W]e determine initially whether a protected . . . interest exists and then what procedures are required to protect that interest." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citing *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990)).

Lewis's claim fails under the second prong of this analysis because he has received all the process the Constitution requires.[7] Lewis had an opportunity to be heard before the NLRB. *See Chavez*, 897 P.2d at 733 (noting that *Garmon* preemption did not deprive plaintiff of a remedy, as he had the opportunity to file a complaint with the NLRB). Indeed, Lewis filed a charge with the NLRB, which he voluntarily withdrew, waiving his right to receive a final, appealable decision.[8] Accordingly, the requirements of due process have been satisfied. *See Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) ("[T]he availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.") (internal quotation marks and

---

[7]A legal cause of action is a protected property interest. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

[8]In the February 2007 letter, Lewis was informed that, absent the voluntary withdrawal of his charge, a final letter would issue dismissing his claim on the merits, which would be appealable to the Board's Office of Appeals.

citation omitted); *Logan*, 455 U.S. at 437 (noting that due process does not require a hearing, but instead an *opportunity* to be heard).

IV.

In sum, we hold that Lewis's wrongful-termination claim is preempted by the NLRA and his argument regarding procedural due process is wholly without merit. Accordingly, we affirm the district court's dismissal of plaintiff's complaint for lack of subject-matter jurisdiction.